Bergan, J.
The main issue in this case, where appellant has been convicted of murder in the second degree, is whether he acted in self-defense. In turn this depends on the proof of appellant’s contention that the deceased had a pistol drawn when appellant shot him.
One witness for appellant testified to this effect; but several prosecution witnesses testified decedent did not have a pistol in hand when defendant shot him and the police found no pistol on decedent’s clothes or on the floor of the premises where the shooting occurred.
This brings into focus the importance of an admission made both to the police and to appellant’s lawyer by one Shelton Seals, who at the time of trial was being held in jail on a charge of robbery, that he had ‘ ‘ picked up the gun ’ ’ apparently which he used in the robbery ‘‘ immediately after the shooting” for which appellant has been convicted. This admission was made in a conversation at the jail with appellant’s counsel; another and similar admission was made by 'Seals in a confession to the police.
If it had been true that Seals picked up a gun from the floor of the premises immediately after the shooting for which defendant has been convicted, this could have a significant *91 bearing on defendant’s contention that decedent was armed and that defendant acted in his own defense.
Seals was called as a defense witness. He refused to answer questions on constitutional grounds. Appellant then offered proof of his admissions. The court sustained objections to them. The ruling was clearly proper upon settled authority in this State. Thus the important question presented by this appeal is whether the existing rule should be continued or abandoned in favor of a more rational view of admissibility of declarations against interest.
In discussing' the admissibility of such declarations against interest as an exception to the hearsay rule, Richardson makes the categorical statement that ‘1 The fact that the declaration alleged to have been made would subject the declarant to criminal liability is held not to be sufficient to bring it within the declaration against interest exception to the rule against hearsay evidence ” (Richardson, Evidence [9th ed.], § 241, pp. 232, 233).
This, as it has been noted, has undoubtedly been the rule in New York (Kittredge v. Grannis, 244 N. Y. 168, 175, 176; Ellwanger v. Whiteford, 15 A D 2d 898, affd. 12 N Y 2d 1037); in the Federal courts (Donnelly v. United States, 228 U. S. 243); and in a majority of the States (31A C. J. S., Evidence, § 219, pp. 608-609).
Yet the distinction which would authorize a court to receive proof that a man admitted he never had title to an Elgin watch, but not to receive proof that he had admitted striking Jones over the head with a club, assuming equal relevancy of both statements, does not readily withstand analysis.
Holmes attacked the distinction in his notable dissent in Donnelly (supra, pp. 277-278) in which, among other things, he said: 11 The rules of evidence in the main are based on experience? logic and common sense, less hampered by history than some parts of the substantive law. There is no decision by this court against the admissibility of such a confession; the English cases since the separation of the two countries do not bind us; the exception to the hearsay rule in the case of declarations against interest is well known; no other statement is so much against interest as a confession of murder, it is far more calculated to convince than dying declarations, which *92 would be let in to hang a man, Mattox v. United States, 146 U. S. 140; and when we surround the accused with so many safeguards, some of which seem to me excessive, I think we ought to give him the benefit of a fact that, if proved, commonly would have such weight. The history of the law and the arguments against the English doctrine are so well and fully stated by Mr. Wigmore that there is no need to set them forth at greater length. 2 Wigmore, Evidence, §§ 1476, 1477.”
Wigmore, as Holmes notes, developed the argument against the distinction, not only on the basis of sheer logic, but on the historical ground that the English cases which created the distinction, particularly the Sussex Peerage Case (11 Cl. & Fin. 85, 109) were a departure from the basic rule of long standing that admissions against interest generally were received, where relevant, and the declarant dead. The Peerage decision was regarded by Wigmore as “not strongly argued and not considered by the judges in the light of the precedents ” (5 Wigmore, Evidence, [3d ed.], § 1476, p. 283). Wigmore concludes his comprehensive analysis of the problem with the statement: “It is therefore not too late to retrace our steps, and to discard this barbarous doctrine ” (op. cit., p. 290).
There seems to be developing in this country a gradual change of viewpoint which would abolish the distinction. In 1964 the Supreme Court of California decided People v. Spriggs (60 Cal. 2d 868, opn. per Trayktor, J.). This held that proof defendant’s companion admitted to the police that the heroin found on the ground was hers was admissible.
Justice Trayktor, discussing the usual rule that admission against pecuniary interest was admissible, said: “ A declaration against penal interest is no less trustworthy. As we pointed out in People v. One 1948 Chevrolet Convertible Coupe, 45 Cal. 2d 613, 622 [290 P. 2d 538, 55 ALR 2d 1272], a person’s interest against being criminally implicated gives reasonable assurance of the veracity of his statement made against that interest. Moreover, since the conviction of a crime ordinarily entails economic loss, the traditional concept of a ! pecuniary interest ’ could logically include one’s i penal interest.’” (pp. 874-875).
In the same direction in Missouri, see Moore v. Metropolitan Life Ins. Co. (237 S. W. 2d 210) and Sutter v. Easterly (354 Mo. *93 282) where there is a good discussion of Wigmore’s .analysis; and in Arizona, Deike v. Great Atlantic & Pacific Tea Co. (3 Ariz. App. 430).
If, as it is argued, Seals picked up a gun on the floor after the shooting (a gun with which he subsequently committed a robbery) it would be a matter of importance in reaching the truth as to whether or not decedent was armed and it would tend to substantiate defendant’s self-defense argument. This kind of admission might well be more important and reliable than the testimony of defendant’s witness that decedent had a gun in hand.
There is another facet. The rule on admissions against interest was based on the absence of the witness; and usually this meant that he was dead. But whether the person is dead, or beyond the jurisdiction, or will not testify, and cannot be compelled to testify because of a constitutional privilege, all equally spell out unavailability of trial testimony. If the rule is to be changed to include penal admissions against interest, it ought to embrace unavailability because of the assertion of constitutional right which might be fairly common in the area of penal admissions.
This is the way the St. Louis Court of Appeals approached the question in Moore v. Metropolitan Life Ins. Co. (237 S. W. 2d 210, 212, supra): “In other words, having regard for the principle of necessity which justifies resort to secondary evidence, a witness who stands upon his constitutional rights is, as a practical proposition, just as fully unavailable as though he were insane or dead or prevented from testifying because of some other acceptable reason. Sutter v. Easterly, 354 Mo. 282, 189 S. W. 2d 284,162 A. L. R 437.”
In People v. Spriggs (60 Cal. 2d 868, supra), the California Supreme Court held the admission against penal interest admissible without reaching, on that record, the kind of lack of availability which would become a basis for taking the admission. The record of that trial did not show whether she was available.
But Judge Trayitob’s footnote 3 (p. 875) was to the effect that ‘1 If Mrs. Roland had taken the witness stand, but refused to testify regarding possession of narcotics, invoking her con *94 stitutional right not to incriminate herself, she would not have been available as a witness.”
The rule in New York should be modernized to hold that an admission against penal interest will be received where material and where the person making the admission is dead, beyond the jurisdiction and thus not available; or where he is in court and refuses to testify as to the fact of the admission on the ground of self incrimination.
Since there is to be a new trial two other points raised by appellant require discussion. The first is that the People were permitted excessive cross-examination of defendant when he took the stand as a witness in his own behalf. One line of questions related to his participation in a fight in which the victim was cut with a knife. Another concerned his paternity of a child, and his relationship with Pamela Sargent, one of the prosecution witnesses. This included inquiry concerning a paternity action in the Family Court.
The District Attorney contends that the questions relating to the assault and other matters were in good faith which is supported by files in his office. Some of this cross-examination was improper, especially the references to the paternity proceedings and perhaps also the incidents of relationships. But if the questions about the assault were asked in good faith they would be proper (see, e.g., People v. Alamo, 23 N Y 2d 630; People v. Van Gaasbeck, 189 N. Y. 408).
Appellant also argues he should have been allowed to examine a witness who testified for the defense concerning an attempt by that witness’ wife to influence his testimony and to influence him not to testify. The witness ’ wife, who was a sister of decedent, had been an important prosecution witness. One of the questions excluded was her conversation with her husband (the defense witness) on “ whether or not you should testify in this lawsuit ”.
The sister was, as it has been noted, an important prosecution witness, and her interest or bias would have been relevant. And it would not have been necessary to ask her about the conversation to lay a foundation for showing her bias or interest (People v. Brooks, 131 N. Y. 321; People v. Lustig, 206 N. Y. 162; People *95 v. Michalow, 229 N. Y. 325). The inquiry should have been allowed.
The judgment should be reversed and a new trial ordered.
Chief Judge Fuld and Judges Burke, Scileppi, Breitel, Jasen and Gibson concur.
Judgment reversed, etc.