Jasen, J.
(dissenting). I would hold that the confession of one participant in a crime who refuses to testify at trial should be admitted in evidence as a declaration against penal interest where there exists a clear indication of the statement’s reliability.
It is difficult to understand the majority’s view that a statement or confession made by a participant in a crime revealing his involvement therein, such as that made by Jones in this case, is not admissible in evidence as a declaration against penal interest. I had thought such a statement or confession was admissible as an exception to the hearsay rule where the person making the admission is dead or beyond the jurisdiction and, thus, not available; or where he is available but refuses to testify in court on the ground of self incrimination. (E.g., People v Maerling, 46 NY2d 289, 295-299; People v Brown, 26 NY2d 88.) As the court below aptly observed, “[Jones’] statements were properly characterized as declarations against penal interest for they qualified as such under the fourfold test enunciated in People v Settles (46 NY2d 154, 167). First of all, [Jones] was unavailable because he refused to testify at defendant’s trial. Secondly, he realized that the statements were against his penal interest when made. Thirdly, the declarant demonstrated a first-hand knowledge of the facts surrounding De Vroom’s murder. Lastly, Gilligan’s testimony constituted independent evidence confirming the reliability and trustworthiness of the declarations.” (68 AD2d, at p 283; see, e.g., People v Piazza, 48 NY2d 151, 157; People v Maerling, 46 NY2d 289, 295-299, supra; People v *51 Brown, 26 NY2d 88, supra; see, generally, Richardson, Evidence [10th ed], §§ 255-266.)
The majority, however, holds that Jones’ station house confession is not admissible as a declaration against penal interest by suggesting that Jones may have bent the truth in a misguided attempt to save his own skin. I find such logic strained.
In the Maerling case, we stated "that the interest which the declaration compromises must be one of sufficient magnitude or consequence to the declarant to all but rule out any motive to falsify.” (46 NY2d 289, 298, supra.) I simply cannot imagine a more compelling interest than the interest of a suspect in a brutal murder to conceal his involvement therein. It seems incredible that a man would confess fully to his participation in a murder in the farfetched hope of receiving lenient treatment, especially where, as here, the very persons whom he could implicate are already in the custody of law enforcement officials. If Jones “believed the police to be already fully apprised of his own role in the crime” (at p 49), it seems far more likely that Jones was prompted to confess because he believed that remaining silent would serve little purpose, rather than to confess in furtherance of an on-the-spot, contrived plan to escape prosecution for murder.
To insist on more reliability than was demonstrated evinces a quest for certainty that transcends the reality of litigation. Such insistence forgets that the dozens of forms of admissible hearsay that are so essential to the trial process would disappear if insurance rather than assurance of reliability was the test. It ignores the fact that direct testimonial proof offers no guarantee of truth, and overlooks the role in our adversarial system of counsel, through whose ministrations the inherent limitations of any form of proof, hearsay or direct, may be put in appropriate perspective.
Once it is established that Jones’ confession is admissible in evidence as a declaration against penal interest, it becomes necessary to resolve the further issue — not reached by the majority due to its disposition — whether defendant’s constitutional right "to be confronted with the witnesses against him” (US Const, 6th Arndt; NY Const, art I, § 6) was violated by the use of these statements at trial. I am convinced that defendant’s right of confrontation was not transgressed, and it was error for the court below to hold to the contrary.
*52 It is fundamental that the confrontation clause does not require that all hearsay statements be excluded from evidence in criminal proceedings, even where the extrajudicial statement incriminates defendant.[1] (See, e.g., Ohio v Roberts, 448 US 56, 63; Dutton v Evans, 400 US 74, 80; Pointer v Texas, 380 US 400, 407; People v Salko, 47 NY2d 230, 241.) This is so because the confrontation clause does not entitle criminal defendants to cross-examine witnesses against them in each and every instance (see United States v King, 552 F2d 833, 846, cert den 430 US 966);[2] rather, if clear indications of reliability exist independent of cross-examination and the finder of facts has sufficient basis for evaluating the truth of the statement offered, a defendant under such circumstances is not deprived of the protections accorded by the confrontation clause. As the Supreme Court wrote in the Dutton case, "[t]he decisions of this Court make it clear that the mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that 'the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement.’ ” (400 US, at p 89, supra, quoting California v Green, 399 US 149, 161.) This view has been recently reaffirmed (Ohio v Roberts, 448 US 56, 65-66, supra), and, thus, it is clear that “practical concern” for the reliability of inculpatory hearsay is the key to confrontation clause analysis. (United States v Alvarez, 584 F2d 694, 701.)
The very predicate for this court’s decision that "[t]he rule in New York should be modernized to hold that an admission against penal interest will be received” in evidence was a recognition of these statements’ inherent reliability (People v Brown, 26 NY2d 88, 94, supra),[3] and further documentation of *53 this well-settled observation would be mere surplusage. Suffice it to say that in People v Maerling (46 NY2d 289, supra), a case in which we undertook an extensive review of declarations against penal interest, our court unanimously held that "in the case of declarations against interest, the theory is that such assurance [of reliability] flows from the fact that a person ordinarily does not reveal facts that are contrary to his own interest. Therefore, the reasoning goes, absent other motivations, when he does so, he is responding to a truth-revealing compulsion as great as that to which he would likely be subjected if cross-examined as a witness.” (Emphasis added.) We went on to say that "[o]ne thing is clear: the severe sanctions potentially attendant upon a conviction for crime, whether by way of imprisonment or fine or both, make admissions of guilt among the most disserving of declarations. We therefore conclude that, conceptually, declarations against penal interest may be admissible against an accused.” (Id., at pp 295, 297.) When one recalls that the introduction of a declaration against penal interest is also dependent upon the submission of "other evidence tending to show that the declarant or someone he implicates as his accomplice actually committed a crime” (People v Settles, 46 NY2d 154, 169, supra), the reliability of the declaration is certainly assured. Indeed, the Supreme Court has observed that "[reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception.” (Ohio v Roberts, 448 US 56, 66, supra.)
Here, not only are Jones’ statements inherently reliable as declarations against penal interest, but there was clear proof, independent of these statements, to establish defendant’s culpability and, thus, confirm the declarations’ veracity. As the majority itself notes, “Jones ** * * gave an account of the crime which was basically the same as that given by *54 Gilligan at the trial.” (At p 48 [emphasis added].) There can be no doubt that defendant’s conviction rested almost entirely upon Gilligan’s testimony at trial. His recitation of the events surrounding the brutal, slashing murder of De Vroom and defendant’s involvement in this animalistic act were exposed to cross-examination and, therefore, the jury was able to assess fully the truth of these statements. Further, one Kremer Hoke testified that a discussion had taken place between defendant and his cohorts in which the victim’s status as an easy prey was mentioned, and not to be forgotten is the jury’s opportunity to evaluate Detective Toone’s credibility.
Under these circumstances, I can only come to the conclusion that defendant’s right to confront the witnesses against him was not transgressed by the introduction of Jones’ declarations against penal interest. Reliability — the very essence of the confrontation clause — was certainly demonstrated as to these statements.
Before concluding, one point should be made clear. By this dissent, I am not advocating a rule of law which contemplates that every extrajudicial statement qualifying as an exception to the hearsay rule be permitted into evidence in a criminal proceeding, for I too recognize that "[wjhile the hearsay rule and the confrontation clause share a similarity of purpose, the protections they afford have not been viewed as entirely equatable.” (People v Salko, 47 NY2d 230, 241, supra, citing Dutton v Evans, 400 US 74, 86, supra; see California v Green, 399 US 149, 155, supra.) Phrased differently, the indicia of reliability which sustain an exception to the hearsay rule do not automatically render nugatory a defendant’s right to confront the witnesses against him. However, if, as in this case, clear indications of reliability exist, I would hold that the confession of . one participant in a crime who refuses to testify at trial, even if it implicates the defendant, should be admitted into evidence. (See, generally, Fine, Declarations Against Penal Interest in New York: Carte Blanche?, 21 Syracuse L Rev 1095, 1118-1134A.)
For the above-stated reasons, I would reverse the order of the Appellate Division, reinstate the murder and robbery convictions, and remit the case to the Appellate Division for determination of the facts. (GPL 470.40, subd 2, par [b]; 470.25, subd 2, par [d].)
*55 Chief Judge Cooke and Judges Gabkielli, Jones, Wachtler and Meyer concur in Per Curiam opinion; Judge Jasen dissents and votes to reverse in a separate opinion in which Judge Fuchsberg concurs.
Order affirmed.

. As stated in Dutton v Evans (400 US 74, 80): "It is not argued, nor could it be, that the constitutional right to confrontation requires that no hearsay evidence can ever be introduced.” Phrased differently, "[i]f one were to read [the language of the confrontation clause]' literally, it would require, on objection, the exclusion of any statement made by a declarant not present at trial. See Mattox v. United States, 156 U. S. 237, 243 (1895) ('[T]here could be nothing more directly contrary to the letter of the provision in question than the admission of dying declarations’). But, if thus applied, the Clause would abrogate virtually every hearsay exception, a result long rejected as unintended and too extreme.” (Ohio v Roberts, 488 US 56, 63.)

. I am not implying, of course, that the right of criminal defendants to question the witnesses against them is not a very important component of the confrontation clause. (E.g., Bruton v United States, 391 US 123.) Also, I must admit that I find the Supreme Court’s analysis in this area less than lucid. (See Younger, Confrontation and Hearsay: A Look Backward, A Peek Forward, 1 Hofstra L Rev 32.)

. It should be noted that at the time Bruton v United States (391 US 123, supra) *53 was tried, the Federal courts did not recognize the declaration against penal interest exception. (Donnelly v United States, 228 US 243.) However, rule 804 (subd [b], par [3]) of the Federal Rules of Evidence now provides, in pertinent part: "The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: * * * A statement which was at the time of its making so far contrary to the declarant’s pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability * * * that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.”