OPINION OF THE COURT
Sybil H. Kooper, J.
Defendant, Sherman Watson, the superintendent of a building located at 2921 Tilden Avenue, Brooklyn, New York, was convicted of murder in the second degree for the . killing of Mrs. Mavis Carter, a 59-year-old tenant in the building.
During the trial the decedent’s friend of 30 years, Mrs. Gladys Yard, testified that she had a telephone conversation with Mrs. Carter at approximately 6:45 p.m. on the evening before the deceased’s body was discovered. Mrs. Yard gave the following testimony which was offered for its truth:
“Q. I would like to bring you back in time to Friday, February 15, 1980. Did you have a conversation with Mavis Carter at some time on that evening?
“A. Yes, in the evening.
“Q. And would you please tell the members of the jury where you were and what time this conversation occurred.
“A. I was on my job, at about a quarter to seven, I called Mavis to tell her that I’m leaving to Boston for the weekend, so she must not call, because I wouldn’t be home. And I said to her, ‘Oh, I’m sorry, Mavis. You’re eating. So I call you back.’
“Q. When you said that, why did you say that?
*72 “A. Excuse me?
“Q. Why did you say that she was eating?
“A. She was like — like she was chewing or something like that. It sound like she was chewing some food.
“Q. All right, go ahead.
“A. So she said, ‘Yes, I’m eating. I just fixed some potato and codfish. I just fix some potato and codfish, and — but that’s all right you can talk.’ Then I told her that I was going over to Boston.
“Q. Did there come a time when something else occurred?
“A. Yes. She said to me to hold on, somebody at my door, and she went to the door.
“Q. Well, what did you hear at that time?
“A. Somebody call her at the door.
“Q. Now, as far as the phone went, I am saying, did you hear someone walking? Did you hear someone place the phone down?
“A. She put the phone down and went to the door.
“Q. You weren’t there. You don’t know where she walked to; is that correct?
“A. No, I don’t know, but she told me she was going to the door.
“Q. Did there come a time when you had further conversation with Mavis Carter?
“A. She came back to me.
“Q. And what was the conversation you had with her at that time?
“A. She said to me, the super is at the door. I am going to let him in, so call me back if you have time.
“Q. Did she mention to you any reason why the super was there?
“A. At her tub —
“A. She said that her tub have a hole, leak, her tub has a leak and the super come to check it out. So if you have some time, Gladys, please to call me back.
“Q. Did you call her back?
*73 “A. I didn’t have the time. I never did get back to her.”
Mrs. Carter’s body was discovered the following day in the bathroom of her apartment. Also in the apartment was an uneaten plate of codfish and potatoes.
Defense counsel objected to the admission of the foregoing testimony on the ground that it constituted hearsay. The objection was overruled. The remainder of the evidence against the defendant was entirely circumstantial. Thus, the decedent’s conversation with Mrs. Yard was crucial since it placed the defendant at the scene of the murder, a fact which he emphatically denied at the trial. Of course the defendant, a thrice convicted burglar and robber, sanitized by People v Sandoval (34 NY2d 371), failed to inform the jury that his employment as superintendent of a large apartment house was inappropriate, to say the least.
PRESENT SENSE IMPRESSION EXCEPTION TO THE HEARSAY RULE
“Hearsay” is defined under the Federal Rules of Evidence (US Code, tit 28) as “a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” (Federal Rules of Evidence, rule 801, subd [c].)
However, while conceding that Mrs. Yard’s testimony was indeed hearsay, it was a “present sense impression” of the declarant and was admitted as an exception to the hearsay rule.
Heretofore this exception has not been recognized by the courts of this State. Subdivision (1) of rule 803 of the proposed New York Code of Evidence is identical to the same numbered section of the Federal Rules of Evidence and provides as follows:
“The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
“(1) Present sense impression. A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.”
*74 The exception is explained in the Advisory Committee Note to rule 803 of the Federal Rules of Evidence (US Code, tit 28, rule 803, p 580): “The underlying theory of [the] Exception * * * is that substantial contemporaneity of event and statement negative the likelihood of [the] deliberate or conscious misrepresentation. Moreover, if the witness is the declarant, he may be examined on the statement. If the witness is not the declarant, he may be examined as to circumstances as an aid in evaluating the statement.”
The note goes on to indicate that the “[p]ermissible subject matter of the statement is limited under Exception [paragraph] (1) to description or explanation of the event or condition, the assumption being that spontaneity, in the absence of a startling event, may extend no farther.” (US Code, tit 28, rule 803, p 581.)
This rule is approved in McCormick, Handbook of the Law of Evidence ([2d ed], §298, pp 709-711). He explains that (pp 709-710): “strong arguments have been made for another exception to the hearsay rule for declarations concerning nonexciting events which the declarant is observing at the time he makes the declarations. Although these declarations lack whatever assurance of reliability there is in the effect of an exciting event, other factors may provide adequate safeguards. First, since the report concerns observations being made at the time of the declaration it is safe from any error caused by a defect of the declarant’s memory. Second, a requirement that the declaration be made contemporaneously with the observation means that there will be little or no time for calculated misstatement and thus provides protection analogous to that provided by the impact of an exciting event.”
The present sense impression exception is also included in subdivision (a) of rule 512 of the Model Code of Evidence (ALI) and has been adopted by at least 17 States in their codified court rules. (See Ariz Rules of Evidence, rule 803, subd [1]; Ark Rules of Evidence, rule 803, subd [1]; Cal Evidence Code, § 1241; Fla Stats Ann, § 90.803, subd [1]; Kan Stats Ann, § 60-460, subd [d], par [1]; Me Rules of Evidence, rule 803, subd [1]; Mich Rules of Evidence, rule 803, subd [1]; Mont Rules of Evidence, rule 803, subd [1]; *75 Nev Rev Stat, § 51.085; NJ Rules of Evidence, rule 63[4], subd [a]; NM Rules of Evidence, rule 803, subd [1]; ND Rules of Evidence, rule 803, subd [1]; Okla Evidence Code, tit 12, § 2803, subd 1; SD Rules of Evidence, rule 803, subd [1]; Utah Rules of Evidence, rule 63, subd [4], par [a]; Wis Rules of Evidence, rule 908.03, subd [1]; Wyo Rules of Evidence, rule 803, subd [1].)
The substance of telephone conversations with homicide victims pertaining to material facts preceding the killing has been admitted over hearsay objections in State v Flesher (286 NW2d 215 [Iowa]); Commonwealth v Coleman (458 Pa 112, 115-119), and McCaskill v State (227 So 2d 847 [Miss]). A similar utterance made by shortwave radio communication was held admissible in State v Connley (295 NC 327, 341-345).
The doctrine proceeds on the theory that under appropriate circumstances an otherwise hearsay statement may possess circumstantial guarantees of trustworthiness sufficient to favor admissibility. This exception to the rule differs from that relating to excited utterances in that emotional excitement is not required. Rather, it is based upon the theory that the substantial contemporaneity of event and statement negative the likelihood of misrepresentation. (See McCormick, Handbook of the Law of Evidence [2d ed], § 298, p 710.)
A noted legal commentator approved the present sense impression declaration as an exception to the hearsay rule a century ago. (Thayer, Bedingfield’s Case — Declarations as a Part of the Res Gesta, 15 Am L Rev 1.)
Thayer identified the exception during an examination of cases dealing with the “res gestae” doctrine, a doctrine that has often been criticized for its imprecision. By invoking the res gestae concept, courts have held that if the out-of-court statement accompanied the principal litigated fact, it would be admissible because the courts could view it as “springing from, the transaction itself.” (The Present Sense Impression Exception to the Hearsay Rule: Federal Rule of Evidence 803[1], 81 Dick L Rev 347, 349.) Often courts mired in the res gestae rationale have articulated no further reason for disposing of issues concerning spontane *76 ous statements. (United States v Bell, 351 F2d 868, cert den 383 US 947; Dameron v Ansbro, 39 Cal App 289; Hastings v Ross, 211 Kan 732, et al.)
It is now apparent that four distinct exceptions to the hearsay rule are embodied in the term res gestae: (1) declarations of present bodily condition; (2) declarations of present mental state and emotion; (3) excited utterances, and (4) declarations of present sense impression. These types of statements are included in rule 803 of the Federal Rules of Evidence as the first four exceptions.
Professor Edmund M. Morgan recognized both statements of present sense impression and the excited utterance as viable hearsay exceptions. He believed that the present sense exception was as reliable as statements of existing mental or bodily condition, holding that since all are “spontaneously” uttered they are all probably truthful. Morgan stated that the present sense impression involves “[clases in which the utterance is contemporaneous with a non-verbal act, independently admissible, relating to that act and throwing some light upon it.” (Morgan, A Suggested Classification of Utterances Admissible as Res Gestae, 31 Yale LJ 229, 236-237.)
However the present sense impression exception was not indorsed by Wigmore, although he did approve of the related spontaneous exclamation exception in this language: “This general principle is based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy, (or at least as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker’s belief as to the facts just observed by him; and may therefore be *77 received as testimony to those facts.” (6 Wigmore, Evidence in Trials at Common Law [3d rev ed], § 1747.)
Thus the rationale of Wigmore’s exclusion is the lack of motivation and opportunity to falsify. The underlying rationale of the present sense and excited utterance exceptions are very similar, i.e., the circumstances surrounding the declaration minimize the motive or opportunity to fabricate. “Spontaneity is the key factor in each instance, though arrived at by somewhat different routes.” (Advisory Committee Note, Federal Rules of Evidence [US Code, tit 28, rule 803].)
Wigmore attempted to clarify the confusion surrounding the res gestae doctrine. However he restricted the concept of spontaneous declarations to statements uttered during the stress of excitement. Unlike Thayer, who had justified admitting these statements because of their contemporaneity with the event described, Wigmore believed them trustworthy because they were produced by a startling event. Consequently “the American law of spontaneous statements shifted emphasis from what Thayer had observed to a requirement of an exciting event and a resulting stilling of the declarant’s reflective faculties.” (McCormick, Handbook of the Law of Evidence [2d ed], § 298, p 709.)
Yet in contrast to the excited utterance, present sense impressions are said to draw reliability from the very fact that the statement was not (emphasis added) caused by excitement: “These statements are found to be exceptionally trustworthy because the fact that they are simultaneous with the event eradicates possible memory deficiencies and fabrication [citations omitted]. The exception is thought to be most appropriate when the declaration in question is made before the declarant is aware that something startling would happen, so that the distortion brought on by excitement would be avoided.” (United States v Narciso, 446 F Supp 252, 285.)
As the court stated in Narciso (supra, p 288): “[T]he applicability of this exception hinges on an absence of time for the declarant to reflect on what happened.”
Other commentators have argued for the acceptance of the present sense impression as a more reliable exception *78 than the excited utterance. (Hutchins and Slesinger, Some Observations on the Law of Evidence: Spontaneous Exclamations, 28 Col L Rev 432.)
The story is told of an “emotionally upset man who testified that hundreds were killed in an accident; that he had seen their heads rolling from their bodies. In reality only one man was killed and five others injured.” (28 Col L Rev 432, 437.) In short “the spontaneous declarations regarded with least favor by the courts are more trustworthy than those which most of them admit without question: those where the trial judge rules that the statement was made under the influence of severe physical shock.” (28 Col L Rev 432, 440.)
Yet only the terms “excited utterance” (or “spontaneous declaration”) and “res gestae” have been alluded to by New York courts, while the concept of present sense impression has never been formally acknowledged.
However present sense impression was seemingly applied (although not labeled as such) in the New York case of Hansell v Galvani (286 App Div 1019), which involved a statement made contemporaneously with the condition reported, namely, the driving of a car, even though the event was not startling. In that case the court held it erroneous to exclude testimony that, immediately prior to a collision between vehicles owned and operated by the plaintiff and defendant, a passenger in the plaintiff’s automobile had exclaimed that the defendant’s car was “coming too fast”.
In recent years the New York Court of Appeals has emphasized that the hearsay doctrine has been too restrictively applied to exclude otherwise reliable evidence from the jury (People v Brown, 26 NY2d 88; Letendre v Hartford Acc. & Ind. Co., 21 NY2d 518; People v Arnold, 34 NY2d 548.)
Subsequently in People v O’Neall (47 NY2d 952) and People v Edwards (47 NY2d 493), the court held that statements qualified as excited utterances although prompted by questions.
And Judge Cooke has stated that spontaneous declarations are admissible even though made by a nonpartici *79 pant. “[t]here is no sound reason why his spontaneous exclamation should not be admitted, for the unexpected exciting event may just as effectively produce a natural and spontaneous declaration by a bystander as by a participant” (People v Caviness, 38 NY2d 227, 232).
In a learned discussion contrasting a spontaneous and calculated act Judge Wachtler stated “ ‘While the time for reflection is not measured in minutes or seconds, it is measured by facts.’ *** Depending on the circumstances, only a brief period of time will render a declaration unspontaneous” (People v Boodle, 47 NY2d 398, 404, cert den 444 US 969).
In the case at bar the declarant was dead and her out-of-court declaration was admitted through the testifying witness. Necessity is an important criterion for determining questions of admissibility. In addition, the declaration comported with the contemporaneity and persipience requirements.
The present sense impression exception is useful in lieu of the excited utterance exception when a startling event has not been proven but the requirement of contemporaneity has been fulfilled. Exclusion of the exception would abrogate the desirable result in cases like Houston Oxygen Co. v Davis (139 Tex 1), thus depriving triers of the facts of useful reliable information.
Chief Judge Desmond once stated: “The objective of all rules of evidence is to prevent failure of justice by putting before the fact triers for testing and acceptance or rejection such oral and documentary proofs as carry a high probability of trustworthiness” (Fleury v Edwards, 14 NY2d 334, 339).
Amen.