■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VICTOR BONILLA, Appellant. — Judgment, Supreme Court, Bronx County (Warner, J.), rendered September 15, 1981, convicting defendant of two counts of burglary in the second degree and sentencing him to concurrent indeterminate terms of from 5 to 10 years, unanimously reversed, on the law, and the matter remanded for a new trial. ¶ Viviano Velasquez testified that defendant and Miguel Sanchez, a codefendant, both of whom he knew by name, broke into his apartment through a window while he was asleep on the living room couch and proceeded to punch and pummel him. In the course of the assault defendant, wielding a linoleum cutter, stabbed Velasquez in the stomach. Eventually, the intruders, after tying up Velasquez, left and took with them his console stereo, some food and approximately $30. It should be noted that the stereo was back in Velasquez's apartment at the time he was discharged from the hospital five days later. Velasquez, bleeding, went immediately to his landlady's apartment and she called the police. She was not permitted, however, to testify as to whether Velasquez told her he had been robbed. In any event, Velasquez did not identify the assailants by name at all that night, either to the police or the landlady. ¶ Eight days later defendant and Sanchez were arrested by Detective McCarthy after Velasquez pointed them out as his assailants. McCarthy testified that once inside the police car, Sanchez, apparently in response to a comment by Velasquez, stated, "What's the big deal? He got back his stereo." Defendant had unsuccessfully sought a severance on the ground that the receipt of Sanchez's admission in evidence would implicate him without affording him the right of confrontation in violation of *Bruton v United States* (391 US 123). During deliberations the jury asked to have Detective McCarthy's testimony read to them. At the conclusion of the reading, defendant's attorney asked the court to instruct the jury that a statement by one defendant could not be used against a codefendant. The court, without explanation, refused. This was error which, in the circumstances presented, calls for reversal. The question of defendant's guilt was close. Limited though we are in our review to the cold record, it appears to us that the testimony of Velasquez, an admitted alcoholic, was replete with inconsistencies. It was also shown that he had a motive to lie — jealousy over defendant's attentions to a woman in whom he was interested. Moreover, Velasquez's testimony that his apartment had been broken into was not substantiated in any respect. Although he had been drinking with Shorty (defendant) and Miguel (Sanchez) immediately prior to the break-in, he never mentioned their names or described them to the responding officers except to say that the taller of the perpetrators was over seven feet. Neither defendant fit this description. Thus, in a case fraught with the possibility that a burglary had never, in fact, taken place (the jury acquitted both defendants of robbery but convicted them of the burglary counts), the failure to instruct the jury that Sanchez's telling admission could not be considered in assessing defendant's guilt cannot be considered harmless error. *People v Green* (75 AD2d 502), upon which the People rely to justify the use of Sanchez's admission against defendant, is not controlling. There, the third party's incriminatory statement was qualified as a declaration against penal interest since its author, having absconded after pleading guilty, was unavailable to testify. A declaration against penal interest, unlike the admission involved here, is admissible, irrespective of whether any privity exists

between the declarant and the party against whom it is offered. (See *People v Brown,* 26 NY2d 88.) ¶ While such distinction may not have any constitutional significance since the denial of the right of confrontation is no less grievous in the case of the reception of hearsay under the declaration against penal interest rule, it is not for us to effect change in the settled law of the State. As for the other cited errors, much is attempted to be made of little, except that defendant's attorney, in his examination of Mrs. Pennetti, should have been allowed to show Velasquez's hostility to defendant as a result of his attention to Velasquez's lady friend, Monin. "[T]he hostility of a witness toward a party, against whom he is called, may be proved by any competent evidence." (*People v Lustig,* 206 NY 162, 172.) Concur — Kupferman, J. P., Sullivan, Carro and Lynch, JJ.

Asch, J., dissents in a memorandum as follows: Defendant was convicted of second degree burglary for breaking into the apartment of Viviano Velasquez, together with one Miguel Sanchez, beating Velasquez about the face as well as stabbing him with a linoleum cutter, taking a console stereo and other items. On the state of the record, I agree with the jury determination and would affirm. ¶ Concededly, there are weaknesses in the People's case but they are not significant compared to what the evidence established Mr. Velasquez testified at trial through an interpreter. He had never been to school and was unable to read. He could not give his height. He gave his age, variously, as 34 and 40. Mr. Velasquez acknowledged that he told the police that the taller of his two attackers was seven feet tall. At trial, the defense proceeded upon the theory that Mr. Velasquez, an alcoholic, allegedly drunk at the time of the crime, could not be relied upon to any degree. The objective facts, however, substantiate the essential elements of the conviction by the jury. ¶ On September 20, 1980, Viviano Velasquez was asleep on a sofa in the living room of his apartment when the defendant, Victor Bonilla, known to Mr. Velasquez as "Shorty", came in through a window he had broken. With him was Miguel Sanchez, known to Mr. Velasquez only by his first name. Mr. Velasquez knew the pair from frequent meetings in the neighborhood. The defendant stabbed Mr. Velasquez in the abdomen with a linoleum knife and then the pair punched him. They tied him up with an electrical cord and then took his "big stereo console," money and food. Mr. Velasquez believed that he had about $30 in cash in the kitchen and "[w]hen I looked for it it wasn't there." The pair spent about an hour in the apartment, "search[ing] everything." ¶ After defendant and Sanchez left, Mr. Velasquez was able to free himself from his bonds and went downstairs to the superintendent's apartment. When Mr. Velasquez came to her door, his mouth was bleeding and he appeared as if he had received "a lot of blows" to his face. Mr. Velasquez was taken to Lincoln Hospital. He was found to have a stab wound one-quarter inch wide in his abdomen, contusions of both eyes and lacerations to his upper lip, thumb and eye. He remained in the hospital until September 25 for treatment associated with his abdominal wound. ¶ On September 28, Mr. Velasquez directed police officers to a group of about a dozen people in the neighborhood and then pointed out the defendants. The defendants were led to the unmarked car by the officers. Once inside the vehicle, they were informed that they were under arrest for burglary and robbery, and handcuffed. Miguel Sanchez remarked, "What's the big deal? He got back his stereo." Detective McCarthy told him to shut up until he could read him his rights. ¶ Mr. Velasquez did get his stereo back. It had apparently been left on the roof, the victim had left his key with the superintendent, and the stereo was inside Mr. Velasquez' apartment when he returned from the hospital. ¶ Charging the prosecutor with numerous instances of misconduct, the defendant seeks to persuade this court that he was denied a fair trial by a prosecutor out to secure a conviction by fair means or

foul. However, when the defendant's list of legal complaints is summed up, it is apparent that only a few are nonfrivolous and those do not have sufficient merit to warrant reversal in the interest of justice.