OPINION OF THE COURT
Cooke, J.
Following a joint trial with codefendant Osborne (Sonny) Boalds, defendant appeals from his judgment of conviction upon a jury verdict for robbery in the first degree (Penal Law, § 160.15). He was sentenced as a predicate felony offender to a term of imprisonment of not less than 10 nor more than 20 years.
The threshold issue we address is whether the identifications made by witnesses at a postindictment, prearraignment corporeal viewing of the then unrepresented defendant should have been excluded where defendant, in the absence of counsel, orally waived his right to have an attorney present at the lineup.
The order of the Appellate Division affirming the conviction should be reversed. The filing of an indictment constitutes the commencement of a formal judicial action against the defendant and is equated with the entry of an attorney into the proceeding. This being the case, a defendant in a postindictment, prearraignment custodial setting, even though not then represented by an attorney, may not in the absence of counsel waive his right to have counsel appear at a corporeal identification. Hence, any actions taken by the police with respect to an indicted but unarraigned defendant which impinge upon his right to counsel may not be used against him at trial.
The facts are uncomplicated and undisputed. On the night of March 9, 1974, two men robbed a bar, its manager and one of its patrons in Queens County. Responding to a radio call, two police officers arrived at the location just as one of the perpetrators was leaving the scene. In an exchange of gunfire one of the officers was fatally wounded, and his partner, after giving chase, soon lost sight of the suspect. Fortunately, later that night the police were directed to proceed to the apartment of Boalds’ common-law wife. After receiving permission to enter and search the premises, they discovered fruits of the earlier robbery, clothes apparently worn by the perpetrators and a gun which later proved to be the weapon which fired the fatal shots. Also in the apartment were Boalds and the defendant. While Boalds was immediately placed under arrest, *160 defendant was merely brought to a police station for further investigation and was released the following morning.
On May 1, 1974, the Queens County Grand Jury returned an indictment charging defendant and Boalds with two counts of murder, two counts of robbery and another of possession of a dangerous weapon arising out of the events of the night of March 9. At that time, however, defendant could not be found and a warrant was issued for his arrest. He was later apprehended and placed in custody in Atlanta, Georgia, and was returned to New York on August 14, 1974. Immediately upon his arrival, defendant was transported to the 113th Precinct in order that he be placed in a lineup. Although not advised that he was under indictment, defendant was given his fourfold Miranda warnings (Miranda v Arizona, 384 US 436), whereupon he agreed to appear in the lineup without an attorney present. Of the five individuals who were present in the bar on the night of the crimes and who viewed the lineup, two were able to identify defendant as one of the perpetrators.
In this State, the right of a criminal defendant to interpose an attorney between himself and the sometimes awesome power of the sovereign has long been a cherished principle. As early as 1777 (NY Const of 1777, art XXXIV), it had been recognized that even the most intelligent and educated layman lacks the skill and knowledge of the legal system to adequately prepare a defense, no matter how strong it might be (see People ex rel. Burgess v Risley, 66 How Pr 67). This need, moreover, has been recognized as all the more vital with respect to the unsophisticated, who are often uneducated in the ways of the criminal justice system and unaware of the role counsel can play in protecting their interests. "There has been no time in the governmental history of this State when the court lacked the power to assign counsel for the defense of indigent persons charged with crime” (People ex rel. Acritelli v Grout, 87 App Div 193, 195-196, affd on opn of App Div 177 NY 587). When a person charged with a crime has been unable to engage counsel because of financial circumstances, it has long been the duty of the court before whom he is brought to assign counsel (see People v Thompson, 205 App Div 581, 582). Indeed, the law has provided for free legal representation of the poor in criminal cases (see, generally, County Law, art 18-A, as enacted by L 1961, ch 365, § 2, as amd; see, also, Code Crim Pro, § 308, as enacted by L 1881, ch 504, § 308, as amd) well before Gideon v Wainwright (372 US *161 335 [1963]). In short, we recognize that the assistance of counsel is essential not only to insure the rights of the individual defendant but for the protection and well-being of society as well. The right of any defendant, however serious or trivial his crime, to stand before a court with counsel at his side to safeguard both his substantive and procedural rights is inviolable and fundamental to our form of justice (see People v Donovan, 13 NY2d 148, 151).
So valued is the right to counsel in this State (NY Const, art I, § 6), it has developed independent of its Federal counterpart (US Const, 6th Amdt). Thus, we have extended the protections afforded by our State Constitution beyond those of the Federal —well before certain Federal rights were recognized (e.g., Escobedo v Illinois, 378 US 478; Massiah v United States, 377 US 201). For example, in People v Di Biasi (7 NY2d 544, 549-551), we held inadmissible statements made by an indicted defendant in a capital case who had previously retained counsel, but who when questioned neither objected to such inquiries, asked to call his lawyer or requested his lawyer to be present (see, generally, 61 Colum L Rev 744; 51 Cornell LQ 356). People v Waterman (9 NY2d 561, 564-566), extended the rule of Di Biasi to all postindictment interrogation in the absence of counsel regardless of the nature of the offense and irrespective of whether the defendant had actually retained counsel at the time of the interrogation. The genesis of the rule was completed after the decisions in People v Meyer (11 NY2d 162, 164-165) and People v Rodriguez (11 NY2d 279, 284), wherein it was made clear that the right to counsel attaches after indictment or arraignment and that a formal request for counsel is unnecessary for that right to attach (see, also, People v Robinson, 13 NY2d 296, 301; People v Gunner, 15 NY2d 226, 231-232; People v Friedlander, 16 NY2d 248, 250 [application of the general rule to varying factual situations]; cf. People v Blake, 35 NY2d 331, 339-340 [right to counsel attaches upon the filing of an accusatory instrument]).
In addition to their right to counsel aspect, these decisions vindicated an indicted or arraigned defendant’s privilege against compulsory self incrimination. Absent the advice of an attorney, the average person, unschooled in legal intricacies, might very well unwittingly surrender this right when confronted with the coercive power of the State and its agents (see People v Hobson, 39 NY2d 479, 485).
However laudable the results of these cases may have been, *162 the rules they enunciated operated in a rather haphazard fashion. For while they insisted that some formal procedure in addition to arrest be initiated, whether by indictment or arraignment, there was no remedy for purposely delayed arraignment and, consequently, there were no remedies to combat abuses in connection with prearraignment, preindictment interrogation (see Rothblatt & Rothblatt, Police Interrogation: Right to Counsel and Prompt Arraignment, 27 Brooklyn L Rev 24, 36-38). This problem was ameliorated by People v Donovan (13 NY2d 148, 151-152, supra) and People v Arthur (22 NY2d 325, 329) which require suppression of any statements elicited from a criminal defendant represented by counsel unless the defendant has first waived his rights in the presence of his attorney (see, also, People v Hobson, supra; People v Townes, 41 NY2d 97, 102-103). Additionally, inasmuch as Di Biasi and its progeny arose prior to Escobedo (supra), Massiah (supra) and Miranda (supra), they contained no discussion of the circumstances in which an indicted defendant could waive counsel.
The initial responses to this problem were inconclusive and somewhat contradictory (compare People v Bodie, 16 NY2d 275, 279, with People v Vella, 21 NY2d 249, 251; cf. State v Green, 46 NJ 192, 200-201; Commonwealth v Frongillo, 359 Mass 132). Later, a closely divided court held that a postindictment waiver of counsel by a defendant not represented by an attorney may be effectuated without having a lawyer present so long as he was administered his Miranda warnings (People v Lopez, 28 NY2d 23, 25-26, cert den 404 US 840). A forceful dissent, however, indicated that a postindictment, unrepresented defendant "is entitled to the advice of a lawyer and that the right may not be waived except in the presence and with the acquiescence of counsel” (28 NY2d, at p 26 [Breitel, J.], supra; see People v Blake, 35 NY2d 331, 340, supra; United States ex rel. Lopez v Zelker, 344 F Supp 1050, 1054, affd 465 F2d 1405, cert den 409 US 1049 [adopting the reasoning of the Lopez dissent]). Lopez was subsequently overruled as it represented nothing more than a sudden, unexplained retreat from an established line of authority (People v Hobson, 39 NY2d 479, 486-488, supra).
Having completed this historical overview, we take this opportunity to make explicit that which was implicit in Hobson: a criminal defendant under indictment and in custody may not waive his right to counsel unless he does so in the *163 presence of an attorney (see People v Blake, 35 NY2d 331, 339-340, supra; People v Reyes, NYLJ, Nov. 18, 1976, p 11, col 5, affd 57 AD2d 738; People v Babcock, 91 Misc 2d 921; 5 Fordham Urb LJ 401, 409; 51 St John’s L Rev 216, 220-222).
Once an indictment is returned against a particular defendant, the character of the police function shifts from investigatory to accusatory (People v Lopez, supra, at p 28 [dissenting opn]). For this reason, the warnings which are sufficient to comply with the strictures against testimonial compulsion do not satisfy the higher standard with respect to a waiver of the right of counsel. Prior to indictment, there may be valid reasons why an uncounseled suspect might wish to deal with the police. He may nourish the hope, however vain, that he can avoid any legal entanglement by simply clearing up a few loose ends. Alternatively, he may feel that by getting into the good graces of the police as an informer he might be able to avoid indictment and trial (see United States v Massimo, 432 F2d 324, 327 [Friendly, J., dissenting]).
No such opportunity is afforded him once the Grand Jury has spoken. At that point, there is no longer any inquiry into an unsolved crime and the suspect is now the accused. He cannot make any arrangement with the police which is not subject to the ultimate approval of the court and there ought be no necessity for further police investigation. In a very real sense, the indictment represents a method of commencing formal judicial proceedings against the defendant (People v Blake, supra, at p 339; Kirby v Illinois, 406 US 682, 688) and it is at that point at which the assistance of counsel is indispensable. To insure that right, once an indicted defendant is taken into custody the police are duty bound to arraign him with all reasonable dispatch so that counsel may be appointed if necessary (People v Alex, 265 NY 192, 195; People v Mummiani, 258 NY 394, 399-400).
Indeed, any delay in arraigning an indicted defendant can have no rationale unless done for the purpose of buttressing what at that point is a prima facie case. For example, here, rather than arraigning defendant immediately, the police subjected him to uncounseled corporeal viewing. They were not merely trying to ascertain whether there was probable cause to believe a crime had been committed or even whether the defendant had committed the crime. They already knew that a crime had occurred and that defendant was to stand trial therefor. This is precisely the juncture at which legal *164 advice is crucial and a well-recognized principle in civil litigation serves as an appropriate analogy. Once a matter is the subject of a legal controversy any discussions relating thereto should be conducted by counsel: at that point the parties are in no position to safeguard their rights (ABA Code of Professional Responsibility, DR 7-104, subd [A], par [1]; American Coll of Trial Lawyers, Code of Trial Conduct, Canon 16; People v Hobson, 39 NY2d, at pp 484-485, supra; Clifton v United States, 341 F2d 649, 652, n 9). The fact that defendant did not have an attorney appointed at the time the police sought their waiver is a distinction without a difference as far as the right to counsel is concerned. The right to counsel is not dependent upon the speed with which an attorney can be retained nor does it pivot on the length of police delay in arraigning an indigent defendant so that counsel may be appointed. To ground an indicted defendant’s right to counsel upon such fortuitous criteria is to debase that right into nothing more than a race for the wary. Except perhaps in the most exigent of circumstances not present here, the police are forbidden to seek an uncounseled waiver of an indicted defendant’s right to counsel (cf. Stovall v Denno, 388 US 293, 302).
Of course, a postindictment defendant may knowingly and intelligently waive his right to counsel at any stage of the judicial proceedings (see People v McIntyre, 36 NY2d 10; Johnson v Zerbst, 304 US 458). But no knowing and intelligent waiver of counsel may be said to have occurred without the essential presence of counsel. True, a defendant would be appreciably less inclined to waive counsel when sufficiently apprised of the effects of that waiver by an attorney (see People v Hobson, supra, at p 485). By the same token, the likelihood of a defendant incriminating himself is diminished when custodial interrogation takes place in the presence of an attorney. That is not the point. At the time when legal advice is most critically needed, our Constitution strikes the balance in favor of the defendant by placing a buffer, in the form of an attorney, between himself and the coercive power of the State. This court has long jealously guarded an indicted defendant’s right to counsel, and we refuse to predicate a waiver of so valued a right on the recitation of a formula printed on a card. Should the police desire to have any dealings with an indicted defendant, except of course in connection with such ministerial matters as pedigree declarations and his process *165 ing as an arrestee, they must do so in the presence of an attorney.
We reject the contention of the People that the purpose of the rule against an indicted defendant waiving his right to counsel in the absence of an attorney loses its force at a corporeal viewing. While we have noted that "the need for and right to a lawyer at an identification lineup is insignificant compared to the need in an ensuing interrogation” (People v Hobson, supra, at p 485), this in no way signifies that the assistance of counsel at a postindictment lineup may be ignored. The statement is simply a reflection of the degree of participation in which an attorney may necessarily engage during the two procedures, i.e., at a lineup, participation is relatively passive and confined to observation, whereas counsel actively advises the defendant during custodial interrogation. In any event, assistance of counsel after indictment at a lineup is an indispensable correlative to a fair trial (People v Blake, 35 NY2d 331, supra; United States v Wade, 388 US 218; Gilbert v California, 388 US 263; Stovall v Denno, 388 US 293, supra). Nice distinctions between the need for counsel at various stages of the proceedings are irrelevant once the right to counsel has indelibly attached.
Nor, contrary to the suggestion of the People, does People v Coleman (43 NY2d 222) command a different result. That case held simply that a court order of removal directing the defendant to appear at a preindictment, prearraignment lineup on an unrelated charge for which he had no attorney triggered his right to counsel, but that defendant could waive that right without a lawyer present. The distinction between Coleman and the present case lies not in the question of under what circumstances the right to counsel attaches, but rather at which point that right has indelibly attached to the extent that it can only be waived in the presence of a lawyer.
A defendant is entitled to the assistance of an attorney at any critical stage of the prosecution. Generally, the critical stage commences upon the filing of an accusatory instrument (see People v Blake, supra, at pp 339-340; CPL 1.20, subd 1), but certain other procedures, such as a court order of removal, are " 'sufficiently "judicial” in nature’ ” to permit invocation of that right (People v Coleman, supra, at p 225). In any of these situations, if an attorney has entered the proceedings, the right to counsel may be waived only in his presence and with his acquiescence (People v Hobson, supra, at p 481; *166 People v Arthur, 22 NY2d 325, 329, supra; People v Donovan, 13 NY2d 148, 151, supra). Similarly, where the investigatory stage of a prosecution has concluded and formal judicial proceedings have commenced, whether by indictment or arraignment, the right to counsel may be waived only in the presence of counsel (People v Blake, supra, at p 340; People v Lopez, 28 NY2d, at pp 26-29, supra [dissenting opn], adopted in People v Hobson, supra). Coleman involved neither of these two situations and therefore a valid waiver was possible without the presence of a lawyer. In contrast, where, as here, all that stands between the entry of counsel into the proceedings and nonrepresentation is the ministerial act of arraignment, there may be no waiver of the right to counsel unless an attorney is present. Thus, where an indictment has been returned, we equate the indictment with the entry of a lawyer into the proceedings and invoke the requirement of counsel’s presence to effectuate a valid waiver.
Defendant raises a number of other issues. We deal with only one, however, since the question doubtlessly will arise upon retrial.
At trial, over objection, defense counsel sought to introduce a document prepared by the police department which synopsized a statement by codefendant Boalds. In that recitation, Boalds had admitted that he was indeed involved in the events of March 9, 1974 and had also implicated one Eduardo George as his lone accomplice in the crimes. Although the record lacks clarity, the statement was apparently suppressed before trial and was not introduced by the People on their direct case. When called by defendant, Boalds refused to testify, invoking his privilege against self incrimination. Thus, the statement was hearsay — an out-of-court statement offered to prove the truth of the matters asserted therein — and was not admissible into evidence unless embraced within an exception to the hearsay rule. The trial court refused to admit the report on the ground that it would cause irreparable prejudice to Boalds and denied defendant’s motion for severance.
The inherent dangers in hearsay evidence are obvious. As the person who made the statement is not called as a witness at trial, the adversary of the party offering the proof is afforded no opportunity to cross-examine the declarant or impeach his credibility (see 5 Wigmore, Evidence [Chadbourn rev], §§ 1361-1362; Richardson, Evidence [10th ed — Prince], § 201). However, oftentimes such evidence is necessary for *167 proper resolution of a particular matter and of necessity a number of exceptions to the general rule have emerged. In certain circumstances, if the strict criteria relating to its admission are met, an out-of-court statement may indeed be admitted into evidence to prove the matter it asserts.
These exceptions to the hearsay rule are necessarily circumscribed. One of them, a declaration against the penal interest of the maker, might permit the introduction of Boalds’ statement into evidence at defendant’s new trial providing there is independent proof that it contains sufficient indicia of reliability and trustworthiness. The basis for this exception lies in the belief that a statement asserting matters directly endangering one’s penal interest by admitting facts that may lead to criminal liability is unlikely to be deliberately false (cf. People v Storrs, 207 NY 147; Lyon v Ricker, 141 NY 225).
Whatever force this rationale may have, prior to 1970 in this State only delcarations against the maker’s proprietary or pecuniary interests were admissible, however arbitrary or "barbarous” this differentiation may have been (5 Wigmore, Evidence [Chadbourn rev], § 1477). The distinction was blurred in People v Brown (26 NY2d 88, 94) which held that a declaration against the penal interest of the maker tending to exculpate the defendant may be admitted at trial (see, generally, People v Maerling, 46 NY2d 289; Fine, Declarations Against Penal Interest in New York: Carte Blanche? 21 Syracuse L Rev 1095; 39 Fordham L Rev 136).
To qualify for admission into evidence as a declaration against the maker’s penal interest the following elements must be present: first, the declarant must be unavailable as a witness at trial; second, when the statement was made the declarant must be aware that it was adverse to his penal interest; third, the declarant must have competent knowledge of the facts underlying the statement; and, fourth, and most important, supporting circumstances independent of the statement itself must be present to attest to its trustworthiness and reliability (see People v Harding, 37 NY2d 130, 135 [concurring opn]; Richardson, Evidence [10th ed — Prince], § 257; Fisch, New York Evidence [2d ed], § 892).
Applying these factors to Boalds’ statement, we note that, should Boalds once again invoke his right against self incrimination when called as a witness at defendant’s new trial, the unavailability criterion will be satisfied (see People v Brown, supra, at p 91). So, too, there can be little doubt but that, as *168 an admitted participant in the robbery and homicide of March 9, Boalds had firsthand knowledge of the facts underlying the statement. Nor is there any serious question but that Boalds was aware of the disserving nature of the statement when it was made as criminal liability would attach as a principal or as George’s accomplice (Penal Law, § 20.00).
Consequently, there remains for our consideration only a discussion of those factors which will indicate whether a specific declaration against penal interest possesses a sufficient probability of trustworthiness to warrant its admission. The rationale for allowing these statements, of course, stems from the assumption that a person would not ordinarily make a statement which jeopardizes his interest by subjecting himself or herself to criminal prosecution and incarceration. As with all generalizations, however, human motivation and personality renders the stated reason for permitting these declarations immediately suspect. Simply stated, people may prevaricate, despite the consequences to themselves, to exculpate those they love or fear, to inculpate those they hate or because they are inveterate or pathological liars. Moreover, the circumstances under which this statement was made must be taken into account. Since Boalds impugned his penal interest when already subject to criminal prosecution, there is a distinct possibility that he was motivated to inculpate George in the vain hope of receiving immunity from prosecution in return for his testimony or of being allowed to plead guilty to a lesser crime. He could have been seeking to protect his real accomplice out of some perverted sense of loyalty at the expense of someone he despised with an irrational passion. Or, he could have been telling the truth. The possibilities are limited only by the depth of human experience.
Hence, it is not difficult to envision the abuses which the unlimited reception of such testimony might generate. To circumvent fabrication and insure the reliability of these statements, there must be some evidence, independent of the declaration itself, which fairly tends to support the facts asserted therein. Holmes, who decried the then-existing rule barring the use of declarations against penal interest, added they should be admissible only when "coupled with circumstances pointing to [their] truth” (Donnelly v United States, 228 US 243, 277 [dissenting opn]; cf. Chambers v Mississippi, 410 US 284 ["corroborative” evidence augmented trustworthiness of declaration to such an extent that its exclusion consti *169 tuted denial of due process]). In requiring some proof supportive of the declaration against penal interest to exculpate the accused, we note that the rule we announce is in accord with the vast majority of jurisdictions which recognize this exception to the hearsay rule.* Only when there is other evidence tending to show that the declarant or someone he implicates as his accomplice actually committed a crime, may a declaration against penal interest be said to display the degree of reliability sufficient to overcome the dangers of admitting hearsay evidence. By imposing such a requirement a balance is struck between the interest of defendant to introduce evidence on his own behalf and the compelling interest of the State to preserve the integrity of the fact-finding process in this aspect of criminal prosecutions.
Naturally, there can be no precise demarcation or formulation of the proof which would constitute sufficient supportive evidence of a declaration against penal interest. By its very nature, the determination involves a delicate balance of diverse factors and is entrusted to the sound judgment of the trial court, which is aptly suited to weigh the circumstances surrounding the declaration and the evidence used to bolster its reliability. The crucial inquiry focuses on the intrinsic trustworthiness of the statement as confirmed by competent evidence independent of the declaration itself. Circumstances of seeming indifference may still harmonize the declarant’s statement so as to furnish the necessary link. By way of illustration, eyewitness testimony placing George at or near the scene of the crime, or proof of his possession of the fruits or instrumentalities used to commit the crime would suffice. Supportive evidence is sufficient if it establishes a reasonable *170 possibility that the statement might be true. Whether a court believes the statement to be true is irrelevant, and the question of admissibility is to be resolved without regard to the seeming strength or weakness of the People’s case. If the proponent of the statement is able to establish this possibility of trustworthiness, it is the function of the jury alone to determine whether the declaration is sufficient to create reasonable doubt of guilt.
Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
Order reversed, etc.

 (Federal Rules of Evidence, rule 804, subd [b], par [3] ["A statement * * * offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.”]; HR Rep No. 93-650, 93d Cong, 1st Sess, p 16; United States v Guillette, 547 F2d 743, 753-755; United States v Brandenfels, 522 F2d 1259, 1264, cert den 423 US 1033; Lowery v Maryland, 401 F Supp 604, 607, affd 532 F2d 750, cert den 429 US 919; People v Craven, 54 Ill 2d 419, 430-431; State v Larsen, 91 Idaho 42, 49; Brennan v State, 151 Md 265, 272; State v Higginbotham, 298 Minn 1, 5; State v Sejuelas, 94 NJ Super 576, 579; NM Stat Ann, § 20-4-804, subd [b], par [4]; Davis v State, 8 Okla Cr 515; State v Fletcher, 24 Ore 295; Cameron v State, 153 Tex Cr 29; Hines v Commonwealth, 136 Va 728, 747; Wis Stat Ann, § 908.045, subd [4]; cf. Deike v Great A & P Tea Co., 3 Ariz App 430, 433; Sutter v Easterly, 354 Mo 282, 295; but cf. People v Spriggs, 60 Cal 2d 868, 874-875 ["corroboration” not discussed but manifestly present under facts]; People v Brown, 26 NY2d 88, 90, supra [declarant’s statement "corroborated” by testimony of disinterested eyewitness]).