THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DONALD HINES, Appellant.

First Department, July 10, 1979

APPEARANCES OF COUNSEL

*Steven J. Hyman* for appellant.

*Colin D. Moorelet* of counsel *(Billie Manning* with him on the briefs; *Mario Merola, District Attorney),* for respondent.

## OPINION OF THE COURT

SILVERMAN, J.

Defendant Hines appeals from his conviction after jury trial of attempting to commit the crime of murder in the second degree.

It was the prosecution's theory that defendant arranged to have his friend, the victim Ellis, ambushed by purported robbers in the course of a walk in which Ellis was accompanied by defendant Hines and their mutual woman friend; that in the course of this purported robbery, the robbers gave defendant Hines the gun and defendant tried to kill Ellis by shooting him and stabbing him several times with a knife.

All this happened on the night of October 1-2, 1975. On October 26, 1975, after defendant had been arraigned but was apparently out on bail, Ellis came into the police station and told Detective O'Grady, the investigating officer, that he had had a telephone conversation with defendant in which defendant said he was sorry for what had happened, and that Ellis thought he could get the defendant to repeat the statement. Ellis then called defendant from the police station with Detective O'Grady listening in, and according to Ellis, defendant said in this conversation that he was sorry that he did it; Detective O'Grady's testimony on the trial as to this conversation was that defendant said that Ellis asked defendant Hines why he was shot and that defendant Hines answered "that someone out in Queens had told him that they seen the complainant coming out of Mrs. Donaldson's [the mutual friend] apartment and that he shot him and that he was sorry that it happened."

On a suppression motion, the court held that in this conversation Ellis was acting as an agent of the police and that the situation was the same as if the police had obtained the statement by device or trickery and therefore the court excluded the detective from testifying as to that telephone conversation but apparently did not exclude Ellis' testifying to it.

On the trial of the People's direct case, Ellis testified as to both conversations. During the defendant's case, the defendant testified and on cross-examination he denied the second con-

versation. Thereafter on rebuttal, the prosecution was permitted to call Detective O'Grady who testified as indicated by way of impeachment.

The conversation of October 26 from the police station was clearly inadmissible on the People's direct case as a postarraignment statement to an agent of the police with neither presence of counsel nor waiver thereof *(People v Meyer,* 11 NY2d 162; *People v Settles,* 46 NY2d 154; CPL 60.45, subd 2, par [b]; *Massiah v United States,* 377 US 201.) It was equally inadmissible whether testified to by the detective or by his agent, the victim Ellis.

To be sure there was no objection by the defendant when Ellis testified to this conversation. But we think the motion to suppress was sufficient to preserve the point.

Once defendant testified to the facts, Detective O'Grady, of course, could have testified to defendant's prior inconsistent statement. *(People v Wise,* 46 NY2d 321.) But we cannot know whether the defendant would have testified if Ellis had not testified to the October 26 telephone conversation.

In the circumstances of this case, we do not think we should overlook the error in permitting Ellis to testify to the October 26 conversation. The prosecution's case was certainly more than sufficient to warrant submission to a jury, being supported by the victim's own testimony as well as other evidence in the case. But there are certain salient weaknesses in the case that make us regard this error quite seriously. It was the prosecution's theory that defendant had arranged for the ambush. But the fact that there was no prearrangement that defendant and Ellis would take a walk, or that they would do it at any particular time, would seem to cast doubt on the probability that defendant's accomplices would be just lying in wait under a railroad trestle on the chance that the defendant would be able to persuade his victim to take that walk at that particular time and place. Again, Detective O'Grady's testimony is somewhat disturbing. At the suppression hearing, Detective O'Grady's version of the October 26 conversation does not include any statement by the defendant as to who shot Ellis but merely defendant's statement that "he was sorry that it had to happen this way; that he had spoken to a few of his friends in the area; and that he didn't realize how much the people liked Mr. Ellis"; "it was just a conversation about why it happenend." But at the trial, after Ellis had testified that in the conversation defendant Hines said "he

was sorry he did it," Detective O'Grady, called on rebuttal, testified, as quoted above, "that he shot him."

The judgment of the Supreme Court, Bronx County (MAZUR, J.), rendered December 9, 1977, convicting defendant after jury trial of attempted murder in the second degree and sentencing him thereon, should be reversed, on the law, defendant's alleged telephone conversation of October 26, 1975 with complaining witness Ellis should be suppressed, and a new trial ordered.

SULLIVAN, LANE and LUPIANO, JJ., concur; KUPFERMAN, J. P., dissents and would affirm.

Judgment, Supreme Court, Bronx County, rendered on December 9, 1977, reversed, on the law, defendant's alleged telephone conversation of October 26, 1975 with complaining witness Ellis is suppressed, and a new trial ordered.