Fuchsberg, J.
(concurring). In my view, there was no effective waiver of counsel at the prearraignment lineup. A critical stage of the proceedings, in this case of intern tional murder, counsel’s insistence on making a hurried exit from the lineup scene was impermissible.
*62 The defendant’s so-called consent to depart has to be regarded as a charade. It certainly was not an informed one. There is not the slightest indication that the client appreciated the importance of the presence of counsel, the recognition of which is at the very heart of the right to counsel rule (People v Hobson, 39 NY2d 479). Indeed, counsel’s manifested intention to absent himself — for no greater announced emergency than to umpire a baseball game — so shocked the Assistant District Attorney that the latter found it necessary to warn counsel that he might be subject to professional discipline. Even then, this delayed him only briefly. Before the lineup itself got underway, to the prosecutor’s disbelief, counsel nevertheless disappeared without notice or explanation. Thereupon, the District Attorney prepared to proceed ex parte. It was only as that was about to take place that counsel, still in absentia, telephoned to inform the District Attorney that the. lineup was fair and his client would consent.
This procedure, engineered, as indicated, by remote telephonic control (see People v Tompkins, 45 NY2d 748), constituted an admixture of a serious instance of defective assistance of counsel and of an impermissible waiver of counsel in the absence of counsel. Separately and in combination, these were violative of both the spirit and letter of the two rights they offended (People v Settles, 46 NY2d 154, 165 [lineup identification]).
The motion to suppress should, therefore, have been granted. For that reason alone, I would join in the reversal.
As to the trial court’s participation in the trial, however, my own examination of the lengthy record compels me to support the conclusion of both Chief Judge Cooke and the Appellate Division that it did not deprive the defendant of a fair trial or of a fair opportunity to present his defense. A conscientious Trial Judge, who must make most trial management decisions on the spot, may elicit important or relevant facts by participating in the questioning of witnesses on matters which may significantly promote a just determination of the trial. Lest we encourage indifference on the part of our Trial Judges, they should not be deterred in their exercise of this discretion by the possi *63 bility that, from the unhurried hindsight enjoyed by a reviewing tribunal, it would have preferred a different or lesser degree of participation. Furthermore, my own judgment of the cold record convinces me that in this case the numerous questions the Trial Judge thought necessary, while assuredly greater than others might have asked, were almost invariably relevant and uninhibitedly productive or confirmatory of truth.
Judges Jasen, Gabrielli, Jones and Wachtler concur with Judge Meyer ; Judge Fuchsrerg concurs in result in a separate opinion; Chief Judge Cooke dissents and votes to affirm for reasons stated in the memorandum at the Appellate Division (73 AD2d 538).
Order reversed and the case remitted to Supreme Court, New York County, for a new trial.