OPINION OF THE COURT
Edward J. McLaughlin, J.
On May 16, 1986, Francis "Mickey” Featherstone, the then second in command of the Westies organization, acted as a government informant and arranged for the recording at the Rikérs Island Jail of a conversation that he had with Kevin Kelly and another. Kelly was a Westie; the other person apparently was not. In the conversation, Kelly acknowledged his own participation in the May 9, 1986 shooting of carpenter’s union official, John O’Connor, and referred to a person *795 named "Gotti”. The People contend that Gotti is the defendant John Gotti and that Kelly’s reference to him implicates Gotti in the assault and in the conspiracy to commit that assault.
 The People offer this recording under two theories. First, it is contended that it is a statement made in the course of and in furtherance of an alleged continued long-standing conspiratorial relationship between the Westies and the Gambino family. Second, the People argue that the statement is a declaration against the penal interest of declarant Kelly. In each instance, the People urge that the tape’s contents are admissible against Gotti as evidence of his participation in the charged conspiracy and of his accessorial liability in the assault itself. The court grants the People’s motion in limine to the extent that a Settles hearing (46 NY2d 154) is ordered to determine the admissibility of the tape as a declaration against penal interest, but the court holds that the statement is inadmissible as a coconspirator’s declaration.
New York law permits the introduction of coconspirator’s statements only , if made in the course of and in furtherance of a conspiracy. In People v Marshall (306 NY 223, 226), the Court of Appeals held that: " '[declarations made by one conspirator in the prosecution of the enterprise are evidence against all, but they must be made in furtherance of the enterprise and while the enterprise is pending. Narration of past facts after the enterprise has come to an end by success or failure is not admissible in evidence against the others’ ”.
The indictment voted by the Grand Jury establishes the parameters of a conspiracy as far as its purpose. The conspiracy was accomplished by the time the conversation took place. The statement, therefore, neither was in the course of the already completed conspiracy (see also, e.g., People v Storrs, 207 NY 147, 157-159) nor did it aid in accomplishing its purpose as Kelly was merely narrating completed events (see also, e.g., United States v Heinmann, 801 F2d 86, 95, cert denied 479 US 1094; United States v Ruggiero, 726 F2d 913, 924, cert denied sub nom. Rabito v United States, 469 US 831).
The court fails to find support for the People’s contention that New York law permits the admission of a conspirator’s statement against those with whom a declarant has conspired in the past and with whom he or she may be expected to conspire in the future. The People are limited by an indictment, as reasonably supplemented by a bill of particulars *796 (People v Iannone, 45 NY2d 589). The indictment charges a conspiracy that allegedly existed from February until May 1986, when its purpose, the shooting of O’Conner, occurred. The People contend that, notwithstanding the indictment’s clear language, they may prove a different, broader conspiracy. The law requires, however, that the theory of the case voted by a Grand Jury be the one tried (People v Grega, 72 NY2d 489).
The People next urge that the tape is admissible as a declaration against Kelly’s penal interest. The defense disagrees, arguing that the statement does not inculpate defendant Gotti and that New York law at best grants the prosecution the opportunity to establish a declarant’s reliability as a prelude to receiving in evidence a redacted statement that deletes all references to Gotti.
To be admissible as a declaration against penal interest, four criteria must be satisfied. First, the declarant must be unavailable to testify; second, the declarant, at the time of the making of the statement, must have been aware that it was against his penal interest; third, the declarant must have had competent knowledge of the underlying facts; fourth, and most importantly, supporting circumstances independent of the statement must exist to attest to its trustworthiness and reliability (People v Thomas, 68 NY2d 194, 197; see also, People v Settles, supra, at 167).
At first reading, some case law requires that portions of an otherwise competent declaration against penal interest be redacted to delete references to codefendants or coconspirators (see, e.g., People v Thomas, supra, at 200-201 [plea allocution]; People v Green, 75 AD2d 502-503 [plea allocution]). As the Court of Appeals has held, a trial court "should admit only the portion of that statement which is opposed to declarant’s interest since the guarantee of reliability contained in declarations against penal interest exists only to the extent the statement is disserving to the declarant” (People v Brensic, 70 NY2d 9,16).
Upon analysis, however, the quote from Brensic (supra) does not appear to express the entire state of the law on the subject in that Brensic and the cases cited therein, as well as Thomas (supra) and Green (supra), do not support that principle’s application in this case. Brensic and the others were postarrest interrogation cases. The instant case, on the other hand, is closely analogous to the situation found in the cases *797 mentioned in the People’s memorandum in which prearrest statements, usually unrecorded, were made to confidants of the declarant. Here, not only was the statement made before Kelly’s arrest, thus negating the prime factor creating understandable skepticism about a declarant’s motivations and truthfulness (supra, at 15), but also the declarant’s own words are available on tape since the conversation was recorded. There is no need, therefore, to assess the credibility and memory of the reporting witness.[1]
The court is satisfied that in the appropriate case a nontestifying declarant’s statement is admissible as direct inculpatory evidence against a trial defendant. Such may be the situation here. The United States Supreme Court in Cruz v New York (481 US 186, conviction revd on remand 70 NY2d 733), after holding that a nontestifying codefendant’s statement inculpating codefendant was inadmissible even if the other defendant’s confession was similar and admitted, added that "[o]f course, the defendant’s confession may be considered at trial in assessing whether his codefendant’s statement are supported by sufficient 'indicia of reliability’ to be directly admissible against [defendant] (assuming the 'unavailability’ of the codefendant) despite the lack of opportunity for cross-examinatian”. (Supra, at 193-194.) In other words, a codefendant’s statement is admissible if the requirements of a declaration against penal interest are satisfied.
This interpretation was confirmed upon Cruz’s (supra) remand to the Court of Appeals, where the People for the first time attempted to argue the statement’s admissibility as a declaration against penal interest. The court said that "it is sufficient to note that the statement was not offered at trial for that purpose and defendant has had no opportunity to challenge its reliability (see, People v Brensic, 70 NY2d 9)” (People v Cruz, 70 NY2d 733, 735).
This holding confirms the significance of the reliability requirement in all declarations against penal interest cases and argues strongly against the defense’s interpretation of the previously cited assertion from People v Brensic (supra, at 16).
Additionally, in People v Sanders (56 NY2d 51, 61, n), the Court of Appeals, although recognizing that the Trial Judge admitted the deceased declarant’s statement against the de *798 fendant under the declaration against penal interest exception to the rule against accepting hearsay statements, specifically did not address that theory of admissibility since it found the taped statement admissible as a coconspirator declaration. Brensic (supra) and People v Young, its companion decision, each struck the proffered statements, finding that "neither satisfied the prerequisites for reliability set forth in People v Settles (46 NY2d 154) and People v Maerling (46 NY2d 289)” (People v Brensic, supra, at 14).
The Brensic decision (supra) faulted the use of the declarations in both cases, not because their use directly implicated a defendant, but because the statements’ reliability had not satisfied the Settles test. Had the reliability criteria been met, then using the statements as direct evidence of guilt of the defendant at trial would have been upheld.[2] This seems to be what the Court of Appeals meant when it referred to the unresolved factual matters about the codefendant’s confession used against defendant Young by stating that "[tjhese were matters which required that the court either deny the motion to use the confession or, at least, hold a hearing to examine the surrounding circumstances for the purposes of determining reliability” (People v Brensic, supra, at 26). Similarly, with regard to the Quartararo confession against Brensic, the court said "[b]ecause introduction of the statement through the testimony of Detective Palumbo constituted hearsay, it was properly admitted only if the circumstances surrounding the confession satisfied the prerequisites of a declaration against penal interest as we have stated them” (supra, at 20).
In view of the many references in the Brensic decision to matters directly implicating the respective defendants at Brensic’s and Young’s trials, the court’s emphasis on reliability, the observation that "only the portion of that statement which is opposed to the declarant’s interest” should be omitted (supra, at 16) is perplexing, seems to be dicta, has limited applicability to a noncustodial statement situation, and seems to have originated in a different context than used here.
The source of the quotation just used seems to be Maerling (supra, at 298), where the court wished to prevent self-serving or neutral portions of statements from being admitted. The *799 court said the "[declarations against penal interest are not admitted on the credit of their makers, but on their highly disserving nature. It follows that neutral and self-serving statements do not bear the same guarantee of reliability as do the disserving ones contained in the same declaration. It is because, without that guarantee, the trustworthiness of collateral statements may be expected to be open to question, that it generally is preferable to avoid the risk that a defendant’s liberty will be endangered by the jury receiving false hearsay”. (Supra, at 299.) The Court of Appeals is again concerned with reliability. The rule, therefore, is not that trial courts must seek to avoid a defendant’s being inculpated by another’s declaration, but only by unreliable information.
In People v Geoghegan (51 NY2d 45, 49), which was cited with Maerling (supra) in Brensic’s paragraph about admitting the material against declarant’s penal interest only, the court approved, rather than condemned, the use of a nontestifying declarant’s statement against the trial defendant. In Geoghegan, a detective who was testifying to an unavailable declarant’s statement about a murder was told to avoid mentioning the defendant’s name. In giving his recitation, however, he mentioned "the defendant,” thereby directly inculpating the defendant with the declarant’s statement.
Following Geoghegan’s conviction, the defense appealed. The Court of Appeals did not hold that the usage of the statement was prohibited per se. Rather, citing the "all but rule out any motive to falsify” language from Maerling (supra, at 298), the court held that a declarant’s motivation to falsify made the statement unreliable.
Finally, if the direct use of a declaration against a defendant, as concededly occurred, were prohibited as fundamentally violative of a person’s right to a fair trial, then the court’s engaging in harmless error analysis in each case was unnecessary (People v Brensic, supra, at 22, 26).
The final matter to be addressed is the need for a hearing on the reliability of the statement pursuant to People v Settles (supra, at 168-170) and Brensic (supra, at 16). The defense contends that declarant Kelly’s statement is unreliable since it was prompted by Featherstone, a government agent, since Kelly may have wanted to curry Featherstone’s favor and since Kelly may have been bragging about something he did not do.
Where a proffered statement occurred in a postarrest *800 custodial setting, a rebuttable presumption of unreliability exists since the declarant "is likely to have a 'strong motive to falsify’ in order to curry favor, shift blame, receive immunity from prosecution or obtain a favorable plea bargain” (People v Brensic, supra, at 15). Those circumstances do not exist here. There is no presumption of unreliability. It is conceded that Kelly was a visitor, not an inmate. A Settles hearing requires a Judge to determine whether the statement was, in fact, against declarant’s penal interest and whether a declarant was motivated by factors that cast doubt on the statement’s reliability (supra, at 25).
First, the tape’s contents are against Kelly’s penal interest in that Kelly reveals his participation in the O’Connor assault and conspiracy. The second determination, that regarding motivation, ordinarily requires painstaking scrutiny of the circumstances attending a postarrest confession that implicates others as well as the declarant. The situation is different here. The declarant, Kelly, was not under arrest, was not aware that others were under arrest for the very crime of which he was accused, he did not have time to reflect in a precinct about what he would say when given the opportunity to provide his version, and the statement was made, furthermore, to an associate in the Westies organization. Moreover, here the tape-recorded statement is not offered through a witness who is subject to the fallibility of human memory and perception and who might have motivations of his own to fabricate or embellish beyond those of the declarant.
A declarant never testifies at a Settles hearing; the usual witness is the civilian or law enforcement person who purportedly heard the statement. In the present case, Kelly apparently is unavailable[3] and a tape recorder may provide the statement itself.[4] Despite the significant differences that apparently exist between this case and postarrest declaration cases, a hearing is required in the instant matter. The court, therefore, orders a Settles hearing at which the People may offer evidence to substantiate their ability to comply with any *801 of the four aforementioned factors that may not be conceded. The defense may offer any evidence relevant, but not speculative, to the statements’ reliability (see, People v Brensic, supra, at 25). The hearing should occur on an afternoon or afternoons during the first week of jury selection so that the court may make its findings before any juror is sworn.

. The tape, of course, may be offered by a law enforcement witness if that person’s testimony satisfies the standards of admissibility. The testimony of a party to the conversation may be unnecessary at the trial.

. The court had ordered the redaction of the statement to remove references to the defendant and other accomplices. The prosecutor’s summation and the court’s charge, however, made the statement direct evidence against the defendant.

. Because Kelly is accused of this very shooting in a pending New York County indictment, he has a recognizable Fifth Amendment privilege that his attorney has stated will be invoked (US Const 5th Amend; NY Const, art I, § 6) outside the presence of the jury (see, People v Anderson, 153 AD2d 893).

. It is possible that the tape is admissible through a law enforcement witness if that person’s testimony satisfies the standards of admissibility. A party to the conversation may be unnecessary.