[701 NYS2d 119]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JANICE
A. HENDERSON, Appellant.

Third Department, November 24, 1999

**APPEARANCES OF COUNSEL**

*Carol Grumbach,* Ithaca, for appellant.

*George M. Dentes, District Attorney* of Tompkins County, Ithaca (*Clifford P. Owens* of counsel), for respondent.

**OPINION OF THE COURT**

MIKOLL, J.

These appeals present a familiar claim—that of ineffective assistance of counsel—in a novel factual context. Defendant, an identical twin, was charged with the possession and sale of cocaine to undercover State Police Investigator Gary Segrue.

Segrue testified that at approximately 5:26 P.M. on July 28, 1995, he went to a house at 209 South Plain Street in the City of Ithaca, Tompkins County, looking for Dora Welch, from whom he was attempting to purchase a gun. When no one answered the door, he descended the porch and on the sidewalk encountered a woman who inquired whether he wanted to buy a "twenty" of crack cocaine. Segrue assented and the transaction was completed. Within the hour, Segrue and City of Ithaca Police Officer Douglas Martin drove by 209 South Plain Street, where Segrue observed the woman from whom he had purchased the cocaine. Martin, who was familiar with both defendant and her twin sister, recognized the woman identified by Segrue as defendant.

The central defense theory at trial[1] was that Segrue and Martin misidentified defendant as her twin, Joyce Henderson (hereinafter Henderson). To this end, defense counsel told the jury in his opening statement that the trial involved a "case of mistaken identity." He cross-examined the police witnesses extensively in an effort to establish the possibility they had confused the two sisters. From Segrue, counsel established the brevity of the encounter and the fact that defendant was unknown to him prior to the transaction, and elicited arguable discrepancies between defendant's physical appearance and the description recorded by Segrue immediately following the transaction. From Martin, counsel established that during surveillance of 209 South Plain Street in the month of July 1995, he had not seen defendant at that location, and further that in identifying defendant as the woman pointed out by Segrue he had failed to observe distinguishing facial scars borne by her.

A series of defense witnesses testified to their acquaintance with Henderson and defendant and their frequent difficulty in distinguishing them. Several of these witnesses also testified that Henderson, unlike defendant, was friendly with Dora Welch and spent a considerable amount of time at 209 South Plain Street in the summer of 1995. One witness testified to an occasion on which the police had mistaken defendant for Henderson in attempting to execute a bench warrant and to several

---

1. This was defendant's third trial; the first two ended in mistrials when the jury could not reach a verdict. Despite defendant's extensive reliance on these mistrials to support her arguments on these appeals, they have no relevance whatsoever to the issue presented.

occasions on which she had impersonated defendant during encounters with the police. Henderson testified that she, but not defendant, was friendly with Dora Welch, that she frequented 209 South Plain Street in July 1995 and that she admitted on numerous prior occasions that she had posed as defendant to avoid arrest. Finally, she testified that on July 28, 1995 she was in front of 209 South Plain Street and was approached by a white male seeking to purchase drugs, but that she did not sell anything to him. As evidenced by its verdict convicting defendant of both counts of the indictment, the jury did not believe that defendant had been mistakenly identified as the perpetrator of a crime that Henderson had committed.

Defendant's sole claim on these appeals is that she was deprived of the effective assistance of counsel when her trial attorney failed to adduce or utilize evidence of a claimed admission by Henderson as to her guilt in the underlying transaction with Segrue. This claim rests entirely on an assertion made in the affidavit of defendant's appellate counsel submitted in support of defendant's CPL 440.10 motion, i.e., that trial counsel informed her that when he interviewed Henderson shortly before trial she admitted selling the cocaine to Segrue. Defendant argues that counsel should have questioned Henderson about her admission when she testified at trial. Had Henderson admitted her guilt in the underlying transaction, defendant claims, this would have significantly bolstered her testimony exonerating defendant. Had Henderson either denied the admission or invoked her 5th Amendment privilege against self-incrimination, defendant maintains that counsel should have attempted to impeach her with her prior statement to him or sought leave to testify himself as to the admission. In this latter event, it is suggested, Henderson's claimed statement would have been admissible under the "declaration against penal interest" exception to the hearsay rule. In any case, defendant urges that counsel's failure to exploit the claimed admission rendered his assistance fatally defective. We cannot agree.

■ We note first that although defendant's ineffective assistance claim forms the sole ground for her direct appeal as well as her appeal from the denial of her CPL 440.10 motion, it is based exclusively on allegations made in the latter context and thus dehors the record and not reviewable on her direct appeal. The remaining question is therefore whether County Court erred in denying her CPL 440.10 motion without a hear-

ing. For the reasons which follow, we agree that a hearing was not required to resolve the question of whether counsel's purported failure constituted ineffective assistance.

█ Given the context in which defendant's claim is asserted, the record is not fully developed as to the precise content of trial counsel's conversation with Henderson, on the basis of which counsel is said to have informed appellate counsel that Henderson "confessed" to him.[2] Assuming for the present purposes, however, that Henderson admitted consummating the sale with Segrue, counsel's election not to utilize this statement when questioning Henderson was quintessentially a tactical decision in no way adversely impacting the defense case. The parties having stipulated that "the packet sold was * * * cocaine," the contested issue at trial was not whether a sale was made, but the identity of the seller. Defendant maintained from the outset that it was not she, but her twin sister who encountered Segrue in front of 209 South Plain Street, the home of Welch, on July 28, 1995. This defense theory was cogently presented in counsel's opening and closing statements and underpinned his cross-examination of the prosecution witnesses. Defense witnesses testified in furtherance of this theory and, although ultimately not credited by the jury, Henderson herself attested to the critical facts of her presence and contact with Segrue on the date and location in question. Whether Henderson admitted or denied the sale itself was not pivotal to defendant's claim of mistaken identity and counsel's treatment of her direct examination on this point was squarely within the ambit of trial strategy.

Moreover, neither of the uses to which defendant claims counsel should have put Joyce's confession were viable options. Defendant misguidedly insists that counsel, armed with Henderson's earlier confession to him, fatally erred when he failed to question her about it and, if denied by her, to impeach her with it. Aside from the questionable wisdom of impeaching

---

**2.** In no way impugning the veracity of appellate counsel's account of her conversation with trial counsel, the record nonetheless invites speculation that as to either this conversation or the underlying discussion between trial counsel and Henderson, something may have been "lost in the translation" in view of counsel's direct examination of Henderson following her testimony that she did not sell drugs to Segrue. We would presume that had Henderson fully inculpated herself to counsel earlier, when she testified that "I told [Segrue] no," he would not have proceeded to elicit a negative response to the follow-up with the question "Did any money exchange hands or anything like that?" (see, Code of Professional Responsibility DR 7-102 [A] [4] [22 NYCRR 1200.33]).

one's own key witness, who had already testified favorably on the only real issue in dispute, impeachment under these circumstances would have been impermissible under CPL 60.35 (1) since Henderson did not give "testimony upon a material issue of the case which [tended] to disprove the position" of the party who called her, nor was the suggested instrument of impeachment a signed written statement or oral statement under oath (*see*, CPL 60.35 [1]; *People v Fitzpatrick*, 40 NY2d 44). Further, even had such impeachment been desirable or permissible, it would have served only to discredit Henderson's testimony and not to establish the truth of the underlying statement.

Similarly lacking in merit is the suggestion that counsel should have sought leave to withdraw as counsel in order to testify to Henderson's admission under the "declaration against penal interest" exception to the hearsay rule. The proponent of evidence under this exception must establish that (1) the declarant is unavailable as a witness at trial, (2) the declarant was aware when making the statement that it was against his or her penal interest, (3) the declarant possessed firsthand knowledge of the facts underlying the statement, and (4) independent indicia of the statement's veracity and reliability (*see*, *People v Settles*, 46 NY2d 154, 167). Applying these requirements to the instant facts, we note that although invocation of the 5th Amendment privilege against self-incrimination may render a testifying witness "unavailable" for purposes of this rule (*see*, *id.*, at 167; *People v Darrisaw*, 206 AD2d 661), whether Henderson would have invoked the 5th Amendment when questioned about her claimed admission to trial counsel is a matter of pure speculation. Furthermore, there is no evidence establishing satisfaction of the remaining three criteria.

On the basis of the foregoing, we are satisfied that defendant was afforded a full measure of competent, meaningful representation (*see*, *People v Baldi*, 54 NY2d 137; *People v Modica*, 64 NY2d 828).

CARDONA, P. J., CREW III, YESAWICH JR. and MUGGLIN, JJ., concur.

Ordered that the judgment and order are affirmed.