OPINION OF THE COURT
Harold E. Collins, J.
In this matter the defendant has been indicted for the crime of perjury in the first degree. The defendant is a trainer of race horses and had been subpoenaed as a witness to appear before the Grand Jury in relation to a presentment against a jockey named Saumell for alleged tampering with a sports contest arising out of a horse race at Belmont Park Race Track on June 22, 1981.
One of the horses trained by the defendant, known as Jack’s Pet, was ridden by jockey Saumell in the second race on the aforesaid date. It appears that eight horses had been entered in the second race and that while the horses were either entering or had entered the starting gate an object hit the left side of the rib cage of Saumell’s horse, then fell to the ground and was picked up by Dr. Manuel Gilman, a veterinarian employed by the New York Racing Associa *46 tion. It was Dr. Gilman’s responsibility to be at the starting gate prior to the running of the race.
After picking up the object Dr. Gilman put it in his pocket and thereafter turned it oyer to the head steward at the track. It appears, further, that in addition to Dr. Gilman and the eight jockeys riding the horses, the defendant, Alex A. Fiore, and a number of other racing personnel were in the immediate vicinity.
The object picked up by Dr. Gilman was a battery device, utilized according to witnesses before the Grand Jury, to deliver an electrical shock and thereby increase the speed of a horse during a race. In the parlance of the racetrack this device is variously called a “joint”, a “battery”, a “buzzer” or a “gator”. In particular, the term “gator” also had other meanings ascribed to it by some of the witnesses.
During the course of an investigation by the racing authorities the defendant gave a written statement to two investigators of the racing association wherein he stated that he heard jockey Saumell say, as he dismounted after the second race, “I dropped my gator, I think the Doctor picked it up.”
Before the Grand Jury investigating Saumell the defendant denied making this statement and testified instead that Saumell said “he blew his gator”. Out of 26 witnesses who testified the only witness who could have connected Saumell with the electrical device picked up by the doctor was the defendant, had he testified in accordance with his written statement. The terminology “blew his gator” without relating it to the object picked up by the doctor could have had one of the other meanings ascribed to it before the Grand Jury and certainly did not have the damaging effect of being the device dropped by Saumell at the starting gate and retrieved by the doctor.
At the conclusion of the presentment no indictment was returned against Saumell and the indictment in the case at bar alleging perjury on behalf of defendant Fiore thereafter followed.
The defendant now moves to dismiss the indictment and for a hearing to suppress the statement given by the defendant to the investigators as being involuntary. *47 The principal contention of the defendant in support of dismissal of the indictment is that his testimony before the Grand Jury was inadmissible since the District Attorney sought to impeach his own witness, in violation of CPL 60.35, when he questioned the defendant regarding his prior inconsistent signed statement.
In opposition, the District Attorney maintains that CPL 60.35 does not apply to Grand Jury proceedings but is only applicable to criminal trials. In any event, the District Attorney argues, no violation of the terms of CPL 60.35 occurred in the course of Fiore’s questioning during the Saumell presentment.
While in the opinion of the court the defendant’s motion to dismiss must be denied, it may be noted initially that the court does not concur in the position of the District Attorney that CPL 60.35 is inapplicable to Grand Jury proceedings.
Pursuant to CPL 190.30, unless otherwise provided in that section, the provisions of article 60 governing the rules of evidence with respect to criminal proceedings in general, are, where appropriate, applicable to Grand Jury proceedings.
CPL 60.35, relating to the impeachment of one’s own witness and being one of the evidentiary provisions of article 60, applies where a witness is called to testify in a criminal proceeding.
CPL 1.20 (subd 18) defines a criminal proceeding as follows: “‘Criminal proceeding’ means any proceeding which (a) constitutes a part of a criminal action or (b) occurs in a criminal court and is related to a prospective, pending or completed criminal action, either of this state or of any other jurisdiction, or involves a criminal investigation.”
Under CPL 190.05 the Grand Jury is a body constituting a part of a superior court and in accordance with CPL 190.50 the People may call as a witness in a Grand Jury proceeding any person believed by the District Attorney to possess relevant information or knowledge; and this is precisely what occurred in the Saumell presentment when the District Attorney subpoenaed the defendant, Fiore, to *48 testify regarding Saumell’s statement about dropping the electrical device.
Thus, while the Grand Jury is an arm of the court and not the agent of the District Attorney (People v Orillo, 100 Misc 2d 527, 530), nevertheless, witnesses are called by the prosecution to give evidence just as they would be called by the prosecution at a trial. Similarly, in the absence of limiting language as specified in CPL 190.30, the statutory rule relating to the impeachment of witnesses applies with equal force to witnesses called before the Grand Jury just as it would to witnesses called by the District Attorney at trial and no cogent reason exists as to why there should be any distinction. Indeed, to hold otherwise would grant sanction to a prosecutor to use inconsistent statements before a Grand Jury as improper evidence-in-chief particularly in those cases where advance knowledge is present as to what the testimony will be.
While the statutory impeachment , rule is therefore an issue for consideration in relation to the instant motion to dismiss, it is singularly apparent from a reading of the Grand Jury minutes that the questions posed by the District Attorney for the purpose of refreshing the recollection of the defendant and with regard to his prior contradictory statement complied with the mandate of the statute.
CPL 60.35 provides as follows:
“1. When, upon examination by the party who called him, a witness in a criminal proceeding gives testimony upon a material issue of the case which tends to disprove the position of such party, such party may introduce evidence that such witness has previously made either a written statement signed by him or an oral statement under oath contradictory to such testimony.
“2. Evidence concerning a prior contradictory statement introduced pursuant to subdivision one may be received only for the purpose of impeaching the credibility of the witness with respect to his testimony upon the subject, and does not constitute evidence in chief. Upon receiving such evidence at a jury trial, the court must so instruct the jury.
“3. When a witness has made a prior signed or sworn statement contradictory to his testimony in a criminal *49 proceeding upon a material issue of the case, but his testimony does not tend to disprove the position of the party who called him and elicited such testimony, evidence that the witness made such prior statement is not admissible, and such party may not use such prior statement for the purpose of refreshing the recollection of the witness in a manner that discloses its contents to the trier of the facts.”
Thus, before a witness may be confronted with a prior inconsistent statement his testimony in the criminal proceeding must not only be material to the issues but must tend to disprove the position of the party calling the witness. In People v Fitzpatrick (40 NY2d 44) the Court of Appeals construed this language to mean that there must be harm or affirmative damage to the party’s case.
In light of Dr. Gilman’s testimony the denial by the defendant of his prior signed statement connecting the jockey with the electrical device and his attempt to place a signficantly different connotation on the jockey’s comment materially and affirmatively damaged the People’s presentation to the Grand Jury.
It may be noted, moreover, that any claim of inadmissibility would appropriately be within the province of jockey Saumell as the target of the Grand Jury investigation and not the defendant who was merely a witness testifying with immunity, any more than a witness at a trial could object to a question asked of him unless, of course, the question violated the witness’ constitutional privilege in some respect which, manifestly, did not occur in the situation presented here. Thus, it was the primary duty of the defendant as a witness to testify truthfully before the Grand Jury.
In light of the above reasoning it is the opinion of this court that the motion of the defendant to dismiss the indictment must, therefore, be denied.
The defendant is, however, entitled to a hearing to determine whether the signed statement given by him to the investigators of the New York Racing Association was voluntarily made (CPL 60.45, subd 2, par [a]) and such hearing shall be held on the eve of trial. The granting of *50 this relief, it may be noted, does not indicate any contrary view with regard to the sufficiency of the indictment as determined herein (People v Oakley, 28 NY2d 309).