OPINION OF THE COURT
Stuart Namm, J.
The People offered the purported oral confession and admission of a codefendant, which inculpated this defendant in the commission of the crime, in evidence at the trial as declarations against penal interest. The codefendant was tried separately and convicted of two counts of murder in the second degree. While the declaration against penal interest exception to the hearsay rule has been the subject of several recent criminal decisions, this court believes that the issue presented in this case is one of first impression in the courts of this State, except for the opinion of the Judge presiding.at the first trial of this defendant which resulted in a mistrial during the People’s case.
From the very outset of this trial, this court has held that it is bound by the rulings resulting from pretrial hearings, such being the “law of the case” (Jones v State of New York, *391 79 AD2d 273, 275; Matter of Gold v McShane, 74 AD2d 860; People v Watson, 57 AD2d 143, revd 45 NY2d 867; Siegel, NY Prac, § 448); but that the court is not bound by any evidentiary rulings during the first trial, the same having been rendered a nullity by virtue of the mistrial. (Siegel, NY Prac, § 403.)
This latter holding becomes critical in view of the previous evidentiary ruling that the confessions and admissions of the convicted codefendant — including a tape-recorded confession — were wholly admissible as declarations against penal interest to inculpate this defendant in the commission of the crimes charged.
STATEMENT OF FACTS
The defendant, Robert Brensic, was indicted by the Grand Jury of Suffolk County and charged with two counts of murder in the second degree: intentional murder and depraved indifference murder. The crimes were allegedly committed by him while acting in concert with, aiding and being aided by two juveniles, Peter Quartararo and Michael Quartararo, and a fourth unnamed person, Thomas Ryan (subsequently indicted), in the murder of a 13-year-old boy, John Pius, by beating, kicking and shoving rocks in his mouth and throat which caused his death.
The incident allegedly occurred on April 20, 1979 at the Dogwood Elementary School, Smithtown, Suffolk County, New York. On April 21,1979, after a continuing investigation which targeted several other youths in the community, homicide detectives, in an effort to obtain additional information relating to a then prime suspect, requested Peter Quartararo, age 15, and Thomas Ryan to accompany them to the local precinct for questioning.
After nearly two and one-half hours of questioning, during which he was confronted by the police with inconsistencies in his responses, the juvenile inculpated the defendant and Thomas Ryan in the murder of the youth. He also admitted being present with his brother at the murder scene, but denied their involvement in the crime. Approximately two hours later, after being taken to the scene, and after being told that he would have to testify in court, the juvenile implicated all four in the commission of *392 the murder. The same was allegedly committed to ensure that John Pius would not disclose to anyone their recent theft of a worthless minibike. At that point, for the first time, the juvenile was given his Miranda warnings (384 US 436). About one hour later an effort was finally made to communicate with his mother, with whom he resided, his parents having been separated at that time.
In the interim period, a surreptitious tape recording was made of the juvenile’s confession and admissions in the police vehicle during the return trip from the Dogwood Elementary School to the local precinct. After being contacted by telephone, the mother was advised of the events just transpired, and was asked to bring her son Michael with her to the precinct juvenile aid office. Before their arrival, a juvenile aid officer was requested to be present. When they arrived at the precinct, about one-half hour later, the two juveniles, Peter and Michael, and their mother were advised of their constitutional rights, which were collectively waived and they agreed to speak to the police without the presence of an attorney.
After asking Michael to leave the room, the arresting officer asked “Peter to tell his mother in his own way, and in his own words what had happened [sic]!” Peter, who was then two days shy of his 16th birthday, proceeded to relate the entire events which occurred on April 20, 1979, their actions leading to the murder — including the theft of the minibike — the murder of John Pius, and the manner in which the four of them had disposed of the body.
The description of the manner in which, and the place where the body was left, matched in every detail with the description of how the body had been found on April 21, 1979 by a friend of the Pius family following an extensive search of the grounds of the Dogwood Elementary School. The friend, Joseph Sabina, Jr., had been expressly directed by the investigating detective not to divulge the manner in which he had discovered the body, so that only he, the police, and the murderer would know the way in which the boy had been left.
After relating the complete story to his mother, which was consistent with the tape-recorded version of the juvenile’s confession, and after attempting to persuade his *393 brother Michael to confess to his involvement in the murder — which he never did, although Michael admitted being implicated in the theft of the minibike — Paul Quartararo then recanted his statements. He subsequently denied being involved in the murder, and said that he had “made up the story because he thought you guys would let me go [sic]!”
defendant’s purported admissions
At the trial the prosecution introduced in evidence three purported oral admissions made by the defendant to others on separate occasions: (1) In April or May, 1979 while in the company of friends, including Peter Quartararo, the defendant and his friends discussed their treatment by the police during their investigation. While speaking to the codefendant, Peter Quartararo, the defendant then stated, “I wouldn’t have stepped on him, if you didn’t put rocks down his throat!” This statement was made in the presence of Michael O’Neill who at trial characterized the statement as a “parody”; (2) In August, 1979, the defendant in response to the question from George Heiselman, “Why did you do it?” answered, “If you were drunk, you would have done it!”; (3) On February 2, 1980, while incarcerated in the Suffolk County Jail for an unrelated crime, the defendant was threatened by other inmates. Brette Locke, intervening as the tier leader to console the defendant, asked the defendant about the Pius murder. Locke testified that the defendant then related the entire incident to him including the events prior to, during, and after the death of John Pius, inculpating himself, the Quartararos and Thomas Ryan in the murder of the Pius youth.
PRIOR TRIAL RULING ADMITTING IN EVIDENCE THE CODEFEN-Dant’s CONFESSION AND ADMISSIONS AS A DECLARATION AGAINST PENAL INTEREST INCULPATING DEFENDANT
Citing People v Brown (26 NY2d 88); People v Maerling (46 NY2d 289), People v Sanders (56 NY2d 51), and People v H. (113 Misc 2d 611), the prior Trial Judge admitted in evidence the testimony of police officers and the tape recording embodying the confession of Peter Quartararo, which inculpated the defendant in the death of John Pius.
*394 Applying the four standards enunciated in People v Settles (46 NY2d 154, 167) that: (1) the declarant must be unavailable as a witness at trial; (2) when the statement was made the declarant must be aware that it was adverse to his penal interest; (3) the declarant must have competent knowledge of the facts underlying the statement; and (4) supporting circumstances independent of the statement itself must be present to attest to its trustworthiness and reliability, the court found that all of the requirements for admissibility of Quart araro’s statement as a declaration against penal interest exception to the hearsay rule had been satisfied.
He then considered whether the codefendant’s statements could be received without violating the confrontation clause of the Sixth Amendment of the United States Constitution which requires that every accused be accorded the right to confront his accusers (“the witnesses against him”). Citing People v Sanders (supra), he held that the admissions of Quartararo equally satisfied the two-prong constitutional test established by the Supreme Court of the United States in Ohio v Roberts (448 US 56): (1) the hearsay declarant must be unavailable at the time of the trial, and (2) the statement to be admitted must bear “indicia of reliability” sufficient to afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement in the absence of cross-examination.
CURRENT STATUS OF NEW YORK LAW RE:
ADMISSION OF DECLARATIONS AGAINST PENAL INTEREST
It should be noted that Sanders (supra) involved the admission of the declaration of a coconspirator made in the course and furtherance of a conspiracy. While the trial court had admitted the statements as declarations against penal interest as well, the Court of Appeals (56 NY2d, at p 61) at that time declined to address the applicability of that hearsay exception to the facts of the case. Applying the two-prong test of Ohio v Roberts (supra), the court found that the defendant’s right of confrontation had not been violated.
Accordingly, it becomes necessary to step backwards for a closer look at Brown (supra) and its progeny to determine *395 the course being followed, if any, by the Court of Appeals on the “confrontation” question, particularly as it relates to the “declaration against penal interest” exception to the hearsay rule. On December 21, 1978, the Court of Appeals decided both Settles (supra ) and Maerling (supra); the former case involved a defendant’s attempt to offer an exculpatory declaration against penal interest of a codefendant who invoked the privilege against self incrimination, and the latter involved an attempt, as here, by the People to offer a declaration against penal interest of a woman who had committed suicide to inculpate the defendant in the commission of the crimes charged.
People v Brown (supra) was the first instance that New York joined the growing number of jurisdictions permitting the use of the declaration against penal interest in a criminal trial, where the interest involved was penal, rather than pecuniary or monetary in nature. The Court of Appeals opined (26 NY2d, at p 91) that the distinction which authorizes “a court to receive proof that a man admitted he never had title to an Elgin watch, but not to receive proof that he had admitted striking Jones over the head with a club, assuming equal relevancy of both statements,” failed to withstand analysis. At this point, the door had been opened, but only to admission of exculpatory statements. However, it is important to note that the court recognized that the assertion of the constitutional privilege of self incrimination rendered a person as unavailable as if he were dead or beyond the jurisdiction of the court (supra, p 93).
Accordingly, the People’s application herein to declare codefendant, Peter Quartararo, unavailable as a trial witness to them was granted. This court found that he was unavailable as a matter of law, since he invoked his privilege against self incrimination at a hearing conducted with the aid of counsel outside the presence of the jury. Such privilege was available to him, despite conviction, in view of the pending appeal to the Appellate Division.
In Maerling (46 NY2d 289, supra), the Court of Appeals concluded, conceptually, for the first time, that declarations against penal interest may be admissible against an accused, but declined to hold that they should be admissi *396 ble under all circumstances. The court stated (p 298): “where the declaration is inculpatory in character, scrutiny of its reliability should, if possible, be even more circumspect because of the due process protections afforded those charged with crime, including, of course, the requirement that guilt be proven beyond a reasonable doubt.” The interest which the declaration comprises must be one of sufficient magnitude or consequence to the declarant to all but rule out any motive to falsify. As pointed out by the court in Brown (26 NY2d 88, 91-92, supra, citing Mattox v United States, 146 US 140), what greater consequence can befall a person than the consequences resulting from an admission of guilt of the murder of a fellow human being? Accordingly, given the nature of Quartararo’s admission, this court could conclude, without more, that Peter Quartararo would have no motive to falsify his offered declarations.
Alluding to the circumstances under which the declarations were made, the court in Maerling (supra, p 301) found that the declarant’s motives to fabricate in that case far outweighed the “paltry proof” offered to establish their reliability, and that “Her statements were neither spontaneous nor promptly made” (emphasis added).
By so saying, has the Court of Appeals ruled out declarations against penal interest used to inculpate another which are not spontaneously made? In the only Court of Appeals decision since Maerling (supra), the court further explained the dicta contained therein, but made no mention of the need for spontaneity. Nevertheless, for the statement to be admissible, it must “all but rule out” a motive to falsify; the declarant must be conscious of the consequences of his statement when it is made; only those parts which inculpate the declarant should be admitted; and there should be an opportunity to show from the circumstances of its making that any indicia of apparent reliability are misleading. But, in an apparent step backwards, since the declarant’s confession in People v Geoghegan (51 NY2d 45, 49) was not limited to inculpating himself, but inculpated the defendant as well, the court held that this fact deprived it of admissibility as evidence of the defendant’s guilt.
*397 In a recent decision written after acquittal, a trial court justified admitting into evidence a declaration against penal interest inculpating the defendant upon the grounds that it had satisfied the four standards of Maerling (supra) and the confrontation requirements of the Sixth Amendment. (People v H., 113 Misc 2d 611, supra.) Conceding that the Court of Appeals has never addressed the confrontation issue with respect to declarations against penal interest used to inculpate another person, that court pointed out that there appeared to be no motive for the declarant to fabricate his admission, and although damaging, the statements offered were not essential to the People’s case (supra, p 616).
THE RIGHT TO CROSS-EXAMINE THE ABSENT DECLARANT: THE CONFRONTATION ISSUE
In the circumstances of this case, the defendant asserts that the inability to directly cross-examine the absent codefendant, Peter Quartararo, about his alleged oral confession deprived him of the constitutional rights guaranteed by the confrontation clause of both the Federal and New York State Constitutions. Without the guidance of New York precedent, resort to Federal case and statutory law is necessary to consider the confrontation question.
Rule 804 (subd [b], par [3]) of the Federal Rules of Evidence permits the admission in evidence of a declaration against the penal interest of a declarant if it were made under such conditions that a reasonable man in his position would not have made the statement unless he believed it to be true.
As the Supreme Court of the United States has stated, the confrontation clause envisions a “personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look upon him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.” (Mattox v United States, 156 US 237, 242-243.)
*398 Thus, the right of cross-examination is far more than a desirable rule of trial procedure. It is implicit in the guaranteed right of confrontation and is an invaluable aid to assure the accuracy of the truth-determining process. (Dutton v Evans, 400 US 74, 89; California v Green, 399 US 149.) It is an essential and fundamental requirement for the kind of fair trial envisioned by the Constitution. (Pointer v Texas, 380 US 400, 405.)
Mere assertion of the right to confrontation, however, does not require the exclusion of all hearsay evidence at a trial. “Reflecting its underlying purpose to augment accuracy in the factfinding process by ensuring the defendant an effective means to test adverse evidence, the Clause countenances only hearsay marked with * * * trustworthiness” (Ohio v Roberts, 448 US 56, 65, supra; emphasis added). Thus, the right of cross-examination is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. (Mancusi v Stubbs, 408 US 204.)
The Supreme Court expressly recognized that the right of cross-examination may yield if a hearsay declarant is unavailable, but his statement will be admissible only if it bears adequate “ ‘indicia of reliability’ ” (Ohio v Roberts, supra, p 66).
After a Huntley hearing (15 NY2d 72), the hearing court found that Peter Quartararo was not in police custody until he made his first admission which inculpated the defendant and Thomas Ryan only. This initial admission ultimately resulted in the confession which incriminated the four defendants. They were made following four to five hours of police interrogation, without the aid of counsel or the presence of a parent, although the police were aware that Peter Quartararo was only 15 years of age. The hearing court concluded that he was not in “custody” until after the initial self' incriminating statement was made. Therefore, the court suppressed any statements taken subsequent thereto, including the surreptitious tape recording made in the police vehicle, until further admissions were later made in the presence of his parents, after Miranda warnings were given. As to the suppressed admissions, the court found that they were obtained in contravention of the *399 requirements and spirit of section 724 of the Family Court Act. That statute requires a police officer to immediately notify a juvenile’s parent, or the person with whom he resides, whenever a person under the age of 16 years is taken into custody for the purpose of an arrest.
At the first trial, the presiding Judge, despite his pretrial findings, ruled that the reliability of the Quartararo declaration against penal interest was an issue of fact for resolution by the jury. Thus, he permitted the use of all of Peter Quartararo’s declarations, admissions and confession including the tape recording and the admissions which he had previously suppressed. Distinguishing this case from the decision in People v Geoghegan (51 NY2d 45, supra), where the court concluded that the declarant had a motive to falsify, as a matter of law, the court reasoned that the jury might find that the declarations were fully self-inculpatory without any attempt by Peter Quartararo to minimize his own role or to curry favor with the detectives who were interrogating him.
This court finds, however, that the question of the reliability of the declarations sought to be admitted as a hearsay exception must first pass muster as a matter of law. Whether a statement is genuinely reliable must be determined from the circumstances of each case. A statement admitting guilt and implicating another person, made while in custody, may well be motivated by a desire to curry favor with the authorities and thus fail to qualify against interest. On the other hand, the same words spoken under different circumstances, e.g., to an acquaintance, would have no difficulty in being trustworthy. A custodial confession is traditionally viewed with suspect reliability insofar as the declarant attempts to shift or share the blame, for whatever reason. (United States v Sarmiento-Perez, 633 F2d 1092, 1096.) A close scrutiny of all the circumstances surrounding the making of the statement is required in order to determine whether it so contravenes the declarant’s penal interest that a reasonable person in his position would not have made the statement accusing another unless he believed it to be true. (United States v Sarmiento-Perez, supra, p 1102.) This was not a spontaneous declaration made to friends and *400 confederates as in Sanders (56 NY2d 51, supra), but a custodial confession elicited under potentially coercive circumstances that could not be adequately explored by cross-examination. At times during Peter Quart araro’s declarations, there existed obvious motives for falsification — the very natural desire (especially of a juvenile) to curry favor from the arresting officers, the desire to alleviate culpability by implicating others, the enmity often generated in a conspiracy, the desire for revenge — all might lead a targeted declarant to misrepresent or exaggerate the role of others in the criminal enterprise. In any event, the question of whether, in the first instance, the declaration passes the test of trustworthiness is certainly a preliminary question of law to be decided by the court.
In determining the reliability of the Quartararo declarations as a matter of law, this court believes that any statements made by the juvenile prior to the appearance of his mother must naturally be suspect and untrustworthy, since they were taken in violation of his constitutional and statutory rights. However, once his mother arrived to aid him, the “obvious motives for falsification” no longer become paramount and it is reasonable to conclude that the statements forthcoming were reliable and worthy of belief.
Accordingly, the statements made by the codefendant, Peter Quartararo, in the presence of his mother at the police station bear sufficient indicia of reliability, as a matter of law, to warrant admission as a declaration against penal interest.
REDACTION OF THE CODEFENDANT’S DECLARATIONS
The use of an oral confession by a codefendant which inculpates another is prohibited to prove the guilt of the latter who is tried separately. (Bruton v United States, 391 US 123.) Thus, if the declarations of Peter Quartararo are to be used at all, effective redaction of his oral statements must be accomplished to delete all specific references to this defendant and other participants in the crime. To do so would be to satisfy the requirements of Bruton (supra) and the dictates of Geoghegan (51 NY2d 45, supra).
The defendant contends that two of the witnesses who testified as to the purported oral admissions of the defen *401 dant are unworthy of belief, and that the third purported admission was stated in jest. Therefore, the credibility of these witnesses and the context in which the third admission was made are critical to the People’s case, and are highly probative to the issues in this case.
As sterilized, the probative value of the declarations outweighs the likelihood of prejudice to the defendant if the redacted declarations are admitted under the penal interest exception to the hearsay evidence rule.
The confrontation issue surfaces only because the jury may infer that the reference to other individuals in the redacted declarations of Peter Quartararo implicitly identified this defendant as one of the participants in the crime. (See Dutton v Evans, 400 US 74, 88, supra.) However, the redacted statement of Quartararo which Detective Palumbo would relate to the jury would be devoid of any express reference to defendant Brensic and the defendant had sufficient opportunity to cross-examine that witness. Moreover, the jury was cautioned that they were to utilize the declarations of Peter Quartararo solely to test the credibility of prosecution witnesses who had already testified and not for the purpose of the defendant’s guilt. The jury was further instructed that if this declaration against penal interest were the only credible evidence of the defendant’s guilt, he must be acquitted of the crime.
In the context of the foregoing analysis it seems clear that the defendant has not been deprived of the right of confrontation on the issue of whether Peter Quartararo actually made the statement to the police in the presence of his mother. “The hearsay rule does not prevent a witness from testifying as to what he has heard; it is rather a restriction on the proof of fact through extra-judicial statements. From the viewpoint of the Confrontation Clause, a witness under oath, subject to cross-examination, and whose demeanor can be observed by the trier of fact, is a reliable informant not only as to what he has seen but also as to what he has heard.” (Dutton v Evans, supra, p 88.)
The defendant was afforded the right to cross-examine the detective who testified as to the declarations of Peter Quartararo in the presence of the jury and had the right to *402 subpoena the declarant’s mother and any other witnesses whose testimony might show that the confession had not been made by her son or that it was wholly unreliable as being trustworthy.
In a decision which was reported after this decision was rendered and before the writing hereof, a trial court permitted the .use of a redacted allocution as a declaration against penal interest in an inculpatory manner on “the sole issue of whether more than one person participated in the crime” (People v Thomas, 117 Misc 2d 1011, 1015). There, as here, the court concluded that there would be no violation of the defendant’s right of confrontation, since the declaration against penal interest was received for a limited purpose, and not as direct evidence of the defendant’s guilt.
For all of the foregoing reasons, the People’s application to offer the oral admission of Peter Quartararo, in the presence of his mother, as a declaration against penal interest, as redacted, was granted.