OPINION OF THE COURT
John Copertino, J.
“The recent past has witnessed an increasing amount of both litigation and counseling in which evidentiary and procedural considerations related to the computer have played a central role; the future promises much more of the same.” (1 Bender, Computer Law: Evidence & Procedure, at xvii.) It is in this context that this court must now resolve defendants’ motion to dismiss the indictment.
I. FACTS
On January 18, 1985, defendants, Frank Russo and Stony Brook Systems, Inc., were indicted for the crime of unlawful use of secret scientific material under Penal Law § 165.07. This section provides: “A person is guilty of unlawful use of secret scientific material when, with intent to appropriate to himself or another the use of secret scientific material, and having no right to do so and no reasonable ground to believe that he has such right, he makes a tangible reproduction or representation of such secret scientific material by means of writing, photographing, drawing, mechanically or electronically reproducing or recording such secret scientific material.” Defendants were not previously charged by felony complaint.
Prior to the filing of this indictment by the Grand Jury, defendants requested and the Special Prosecutor granted the defendants and any witnesses they might choose to call, an opportunity to appear and testify before the Grand Jury. Defendants also requested that the Special Prosecutor supply them with, among other things, “a description of the computer system allegedly stolen with as great a degree of specificity as you can give us” and information “as to when the theft took place and the names of any other individuals whom you believe are accomplices or co-conspirators.” Initially, the Special Prosecutor refused to divulge any of this information.
Defendants then moved in County Court, by order to show cause dated November 29, 1984, for an order directing the Special Prosecutor to release to defendants “a descriptive statement * * * as to exactly what computer software items were allegedly stolen from Stony Brook University Hospital.” On December 13,1984, an oral decision was rendered by a Judge of *878 this court (Hon. Stuart Namm, J.) directing the Special Prosecutor to make available to defendants’ attorneys a memorandum defining the present scope of the Grand Jury investigation. On February 28, 1985, Judge Namm issued a formal written decision to the same effect. The Special Prosecutor responded to the court’s decision by letter dated December 14, 1984 in which defendants were informed by the Special Prosecutor that “during the period of approximately June, 1981 through August, 1981, Frank Russo and Stony Brook Systems, Inc. were involved in the taking of computer code from the University Hospital at Stony Brook.”
On January 7,1985, the corporate defendant’s attorney orally requested the court to direct the Special Prosecutor to “reveal more information concerning the computer issue than was contained in the letter of December 14,1984.” Judge Namm denied this application and stated that the Special Prosecutor’s letter of December 14, 1984 complied with his decision. By letter dated February 1,1985, defendant’s attorney then notified the Special Prosecutor that Frank Russo was withdrawing his request to testify before the Grand Jury regarding the “software issue” and that he would not be asking the Grand Jury “to hear any other witnesses on that issue.” Defendant’s attorney also stated his reasons for taking this action: “Our ability to present a defense on the ‘software’ issue in the Grand Jury was precluded by the refusal of your office to inform us as to the nature and scope of the investigation and in particular as to the specific computer code allegedly stolen or misused.” Defendants were subsequently indicted.
II. ISSUES
Defendants now seek to dismiss this indictment on the grounds that they were denied their opportunity to testify and present witnesses before the Grand Jury in accordance with CPL 190.50. They contend that they were denied this opportunity because of the refusal of the Special Prosecutor to specifically identify the computer “software” which was allegedly stolen from Stony Brook University Hospital. Defendants argue that they were entitled to this “pre-indictment discovery” because the same information is available to a defendant charged with a felony complaint prior to indictment and because of the complex nature of the submission to the Grand Jury.
III. CONCLUSIONS
A. Preindictment Discovery
Historically, a Grand Jury has broad powers of investigation and inquisition. (Branzburg v Hayes, 408 US 665.) Such powers *879 are available to the Grand Jury for the purpose of determining if a crime has been committed and, if so, by whom. (Branzburg v Hayes, supra; People v Calbud, Inc., 49 NY2d 389, 394; People v Filis, 87 Misc 2d 1067, 1068.) A Grand Jury may not return an indictment unless it has legally sufficient evidence of defendants’ guilt. (People v Torres, 63 AD2d 1033, affd 53 NY2d 213; Matter of Additional Jan. 1979 Grand Jury v Doe, 50 NY2d 14, 19.) The information required to be contained in a felony complaint need only establish that there is probable cause to believe a suspect has committed a crime. (People v Torres, supra.)
During the course of its investigation, the nature of the charges and the identity of the Grand Jury’s “target” may vary greatly. (Matter of Report of Special Grand Jury, 77 AD2d 199, 201; People v Webb, 105 Misc 2d 660.) As the court noted in People v Webb, “the items initially requested by a demand [for discovery] on a felony complaint may no longer be relevant after indictment” (People v Webb, supra, p 661). For this court to adopt a “per se” rule that defendants should be entitled to the same preindictment information as a defendant who has been charged with a felony complaint would not only impede the investigatory process of the Grand Jury, but also unreasonably interfere with its ability to make legitimate inquiry' into potential criminal activity. (Virag v Hynes, 54 NY2d 437, 443-444; Matter of Additional Jan. 1979 Grand Jury v Doe, supra, p 20; cf. Matter of Report of Special Grand Jury, supra, p 201; Matter of Rodriguez v Morgenthau, 121 Misc 2d 694.)
Assuming, arguendo, that defendants were permitted to have information usually contained in a felony complaint, it is doubtful a felony complaint would have revealed the specific description of the computer software sought by the defendants. (People v Natoli, 112 Misc 2d 1069.) Furthermore, there is no provision for discovery under GPL article 240 upon a felony complaint. (GPL 240.20 [1]; Callaghan, Criminal Procedure in New York, part I, ch 23, at 1.)
It is defendants’ second contention that presents a more troublesome and perplexing question. In a complicated case such as this, did the failure of the court to direct the Special Prosecutor to provide defendants with a specific description of the allegedly stolen property deprive defendants of an opportunity to give meaningful and relevant testimony before the Grand Jury?
Courts have a responsibility to prevent unfairness in Grand Jury submissions. This duty is based on the principle that the Grand Jury is an “ ‘arm of the court’ ”. (People v Ianniello, 21 NY2d 418, 424, cert denied 393 US 827, citing Matter of Spector *880 v Allen, 281 NY 251, 260; People v Monroe, 125 Misc 2d 550; Matter of Rodriguez v Morgenthau, 121 Misc 2d 694, supra.) It is also incumbent on the District Attorney, as a public officer, to act fairly in presenting a case to the Grand Jury. (People v Martinez, 111 Misc 2d 67, 68; People v Lofton, 81 Misc 2d 572, 575, affd 58 AD2d 610; People v Lazar, 51 Misc 2d 233, 237-238.) There are numerous examples where the courts have acted in accordance with these principles to prevent abuse of the Grand Jury proceedings or “overreaching” by the District Attorney. (People v Pelchat, 62 AD2d 97; People v Durante, 97 AD2d 851; People v Green, 80 AD2d 650; People v Hunter, 126 Misc 2d 13; People v Davis, 119 Misc 2d 1013, 1016; People v Montalvo, 113 Misc 2d 471; People v Martinez, 111 Misc 2d 67; People v Suarez, 103 Misc 2d 910; People v Dunbar, 100 Misc 2d 389, 390-391; People v Luna, 127 Misc 2d 608; Morvillo, Grand Jury Issues, NYLJ, Apr. 3, 1984, p 1, col 1.)
The line running through each of these cases is the court’s concern for fundamental fairness and its awareness of constitutionally protected rights. It is this same concern that prompted one court to declare: “In the instant matter, we have held that, on the basis of the testimony in the hearing before us, the defendant was sufficiently apprised of the nature and scope of the Grand Jury’s inquiry to enable him to appear as a witness before it if he wished to under GPL 190.50, and to do so without deprivation of his right to the effective aid of counsel. But if this had not been the case, the District Attorney might well have given careful deliberation to the wisdom of apprising the defendant of the statutory and subject areas that were the concern of the Grand Jury inquiry” (People v Root, 87 Misc 2d 482, 487), and another to state that “The District Attorney’s papers must at least give the defendant some idea ‘of the nature and scope of the Grand Jury’s inquiry’ so as to enable him to appear meaningfully as a witness” (People v Martinez, supra, p 69, citing People v Root, supra).
Not all courts have been in agreement with this concept of preindictment discovery. (People ex rel. Mieczko v McCloskey, 33 Misc 2d 175, affd 16 AD2d 878.) More recently in a case involving an appeal of an order directing a recalcitrant witness to answer questions asked of her before the Grand Jury, the Court of Appeals stated: “It should be abundantly clear that if public disclosure of the nature of an investigation * * * were mandated, the very function of the Grand Jury would be undermined.” (Matter of Additional Jan. 1979 Grand Jury v Doe, supra, p 21.) In another matter involving a motion to quash a subpoena requiring the petitioner to appear and testify before a Grand *881 Jury, the Appellate Division, Third Department, citing Matter of Additional Jan. 1979 Grand Jury v Doe, with approval, reversed the order of Trial Term, Supreme Court, which granted the motion to quash. (Matter of Dwyer v Wilcox, 92 AD2d 646.) The Appellate Division in that case held “In advance of such appearance, however, there is no authority to quash a subpoena ad testificandum otherwise facially regular, for its failure to specify the areas of inquiry.” (Matter of Dwyer v Wilcox, supra, p 647.)
Bearing these principles in mind and considering the amount and nature of the information available to the defendants prior to the notice that they were withdrawing their request to testify and present witnesses before the Grand Jury, this court cannot conclude that the Special Prosecutor did not act in good faith* or that defendants were deprived of their rights under CPL 190.50.
While this court is cognizant of the many difficulties confronting the attorney representing a client who may be the target or subject of a Grand Jury investigation (Arkin, Target or Subject of Inquiry — Defense Counsel’s Dilemma, NYLJ, Oct. 18,1984, p 1, col 3) and the uncertainties of dealing with complex computer technology, here defendants were aware the Grand Jury was investigating “the taking of computer code from Stony Brook University Hospital and delivering it to Albert Einstein Hospital in Philadelphia” (Motion to dismiss, exhibit B, at 2 and exhibit D, at 4 of affidavit of defendant’s attorney) and that the Grand Jury was investigating the activities of the employees or agents of Stony Brook Systems, Inc., in this regard (Motion to dismiss, exhibit B, at 2). Furthermore, in accordance with the aforementioned oral decision of Judge Namm dated December 13, 1984, the Special Prosecutor informed defendants that the offense occurred during the period of approximately June 1981 through August 1981 and that “Frank Russo and Stony Brook Systems, Inc. were involved in the taking of computer code from *882 the University Hospital at Stony Brook”. Defendants also knew that this code consisted of computer “software.” (Motion to dismiss, exhibit D, at 6 of affidavit of defendant’s attorney and exhibit H.) At a minimum, this information differentiated the crimes being investigated from other types of computer-related criminal activity (Raysman and Brown, Evolving Statutes on Computer Crime, NYLJ, Jan. 11, 1983, p 1, col 1).
Some comment is also necessary regarding the motivation of defendants’ attorney in seeking this evidence. As previously noted in the letter to Terrence Buckley, Special Assistant Attorney-General, dated February 1, 1985, defendants’ attorney stated “our ability to present a defense on the ‘software’ issue in the Grand Jury was precluded by the refusal of your office to inform us * * * as to the specific computer code allegedly stolen or misused” (emphasis added). A “defense” is defined as “evidence offered by [the] accused to defeat [a] criminal charge.” (Black’s Law Dictionary [5th ed] 377.) It is clear that there is no obligation on the part of a prosecutor to supply evidence which is being sought for the purpose of rebutting a prosecutor’s presentation before the Grand Jury. (Matter of Morgenthau v Altman, 89 AD2d 531 [dissenting opn], affd 58 NY2d 1057.)
B. Law of the Case
In his reply affidavit filed in support of this motion, defendants’ attorney states: “Mr. Buckley’s answer relies upon a decision of Judge Stuart Namm rendered from the bench on December 13, 1984. I respectfully submit that such reliance is misplaced. Judge Namm’s decision was partially incorrect.”
When a motion is made to convince the judge that his interpretation of the law was incorrect, such motion must be made before the judge who executed the original order. (CPLR 2221; Siegel, NY Prac § 254, at 313.) In this case, defendants do not seek reargument of the motion, but rather reargument of an issue previously decided by a judge of this court in this criminal proceeding. The doctrine of “law of the case” has been described as a rule which requires that an issue decided on the merits within a case be binding not only on the parties, but also on all other judges of coordinate jurisdiction. (Jones v State of New York, 79 AD2d 273, 275; Siegel, NY Prac §488, at 593; 5 Weinstein-Korn-Miller, NY Civ Prac H 5011.09, at 50-76.) Although its use in criminal cases has been questioned (People v Blake, 35 NY2d 331; People v Root, 68 AD2d 8, 11), it has been held to be applicable in criminal proceedings (People v Finley, 104 AD2d 450; Gold v McShane, 74 AD2d 860; People v Watson, 57 AD2d 143, 145, reversed on other grounds 45 NY2d 867; *883 People v Brensic, 118 Misc 2d 390, 391; People v Wright, 104 Misc 2d 911), subject to certain exceptions. (People v Blake, supra, pp 334-335; People v Carson, 99 AD2d 664; People v Loizides, 123 Misc 2d 334; People v Brensic, supra, p 391; People v Wright, supra, p 996.)
In defendants’ prior motion before Judge Namm, the court was requested to direct, among other things, that the Special Prosecutor advise defendants of the nature and scope of the investigation including a description of any property allegedly stolen. In the affidavit in support of this application, the defendants’ attorney states specifically that defendants were unable to prepare their testimony before the Grand Jury because they were denied a descriptive statement by the Special Prosecutor as to exactly what computer software was allegedly stolen from Stony Brook University Hospital. In his affidavit in support of the present motion, defendants’ attorney states: “The basis for the defendants’ motion lies in the refusal of the prosecutor to provide the defendants with an adequate description of the nature and scope of the Grand Jury investigation, including a description of the property allegedly stolen which thereby deprived the defendants of an opportunity to appear before the Grand Jury and testify in their own defense.” It is apparent that the same issue of law which was determined by Judge Namm on the merits is now presented here.
The only question remaining is whether the previous ruling on this issue, which was made prior to indictment and commencement of the criminal action (CPL 1.20 [16]) is part of this “case.” The “law of the case” applies when “the same point within the same litigation binds the parties” (Jones v State of New York, supra, p 275; emphasis added). A local criminal court, applying the law of the case doctrine, held that determination of an issue arising under a motion to dismiss a misdemeanor complaint would be binding upon the District Attorney in another motion made by the defendant for return of his property after the same misdemeanor complaint had been dismissed. (People v Braunhut, 101 Misc 2d 975.) In People v Brensic (supra), the court held that upon retrial of a criminal action, the court would be bound by the rulings which resulted from the pretrial hearings of the first criminal action. By analogy, a determination of an issue on the merits, prior to the commencement of the criminal action but during the criminal proceeding (CPL 1.20 [18]; People v Fiore, 112 Misc 2d 45, 47), should not preclude application of the doctrine to the situation that presents itself here.
*884 The rule of “law of the case” is not inflexible (Matter of Rose, 109 Misc 2d 960, 967), and its applicability in any given case is a matter of judicial discretion. (People v Carson, supra, p 664.) However, having examined the merits of defendants’ present application, this court can find no reason to depart from the principles of the “law of the case”. The issue of whether defendants were improperly denied a specific description of the property allegedly stolen from Stony Brook University Hospital was decided previously by a judge of this court during the criminal proceeding and that determination has become “the law of this case”. Accordingly, defendants’ motion to dismiss the indictment pursuant to CPL 210.35 (4) is denied.

 Judge Namm, in his oral decision dated Dec. 13,1984, referred to the effort of the Special Prosecutor in releasing some information prior to defendants’ appearance before the Grand Jury. “Nevertheless, because the Attorney General herein has already deemed fit to reveal to some extent the scope of the Grand Jury investigation in an informal manner, and to insure that the petitioners have ample opportunity to present their testimony to the Grand Jury with effective assistance of counsel, the Attorney General shall make available to the defense counsel at the office of the Attorney General no later than the close of business on December 14th, 1984 a memorandum setting forth the present scope of the Grand Jury investigation”, and “Just so I’m certain that both of you understand; what I’m in essence saying to you, Mr. Buckley, is that I’m going to ask you to put in writing by tomorrow afternoon in essence what you’ve already told the petitioners.”